

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-23-2002

# Torres v. Fauver

Precedential or Non-Precedential: Precedential

Docket No. 99-5574

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Torres v. Fauver" (2002). *2002 Decisions.* Paper 290.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/290

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed May 23, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-5574

ANTONIO TORRES,

Appellant

v.

WILLIAM FAUVER, New Jersey Commissioner of
Corrections; E. CALVIN NEUBERT, Administrator Bayside
State Prison; CONRAD DILKS, Assistant Administrator
Bayside State Prison; LANCE MEEHAN; PERCY GARNER;
SGT. ADAMS; LISA LITTLE; JOE DOE, fictitious name of
individual to be identified when the identity becomes
known; JANE DOE, fictitious name of individual to be
identified when the identity becomes known, all of them
in their official capacity and individually; DR. RICHARD
CEVASCO, Director of Psychological Services, individually
and in his official capacity

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 95-cv-03435)
District Judge: Honorable Mary Little Cooper

Argued: June 21, 2001

Before: ROTH, AMBRO, and FUENTES, Circuit Judg es

(Filed: May 23, 2002)

PHILIP N. YANNELLA, ESQUIRE
 (Argued)
Dechert, Price & Rhoads
1717 Arch Street
4000 Bell Atlantic Tower
Philadelphia, Pennsylvania 19103

Counsel for Appellant

JOHN J. FARMER, JR., ESQUIRE
Attorney General of New Jersey
PATRICK DEALMEDIA, ESQUIRE
Deputy Attorney General
LISA A. PUGLISI, ESQUIRE (Argued)
Deputy Attorney General
Office of the Attorney General of
 New Jersey
Division of Law
Richard J. Hughes Justice Complex

P.O. Box 112
Trenton, New Jersey 08625

Counsel for Appellees

OPINION OF THE COURT

AMBRO, Circuit Judge:

Antonio Torres, a former state prisoner who is no longer "in custody" within the meaning of 28 U.S.C.S 2254 (the federal habeas corpus statute),[1] appeals the District Court's grant of summary judgment dismissing his 42 U.S.C. S 1983 action, which alleged, inter alia , that his due process rights were violated when he was sanctioned for violating prison rules. The sanctions imposed on Torres did not revoke any good-time credits or otherwise affect the fact or length of his confinement; he was placed in disciplinary detention for 15 days and administrative custody for 120 days. Yet the District Court ruled that his due process

_____

1. For habeas purposes, "custody" includes not only incarceration, but also other restraints on liberty, such as parole. See, e.g., Jones v. Cunningham, 371 U.S. 236, 242-43 (1963).

2

claim was not cognizable under S 1983 because of the "favorable termination rule" announced in Heck v. Humphrey, 512 U.S. 477 (1994), and extended to prison disciplinary sanctions that alter the duration of a prisoner's incarceration in Edwards v. Balisok, 520 U.S. 641 (1997). Under that rule, a S 1983 plaintiff cannot seek damages for harm caused by actions the unlawfulness of which would necessarily render the fact or length of his confinement invalid, unless he can prove that the conviction, sentence, or prison disciplinary sanction that resulted from those actions has been reversed, invalidated, or called into question by a grant of federal habeas corpus relief (in other words, terminated favorably to the plaintiff). Heck, 512 U.S. at 486-87; Edwards, 520 U.S. at 646-48.

Torres's appeal presents a question that neither the Supreme Court nor our Court has decided: whether someone no longer in custody (and thus unable to petition for a writ of habeas corpus) can seek damages under S 1983 for an allegedly unconstitutional prison disciplinary sanction that did not affect the fact or length of his confinement. We hold that the favorable termination rule does not apply to claims that implicate only the conditions, and not the fact or duration, of a prisoner's incarceration. We thus hold that the District Court erred in ruling that Torres's due process claim is not cognizable underS 1983.

Nonetheless, we affirm the District Court's grant of summary judgment on a different ground. The sanctions imposed on Torres were within the scope of his sentence and, under Sandin v. Conner, 515 U.S. 472 (1995), and our

recent decision in Fraise v. Terhune, 283 F.3d 506 (3d Cir. 2002), did not impinge a liberty interest protected by the Constitution's Due Process Clause.

## I. Factual and Procedural History

On July 14, 1993, Torres, a former inmate at New Jersey's Bayside State Prison ("BSP"), appeared before the BSP Classification Committee (the "Committee") while still in prison. The Committee informed Torres that it had granted him "Full Minimum Status," which in this instance meant placement in a minimum security prison for a work

detail. That minimum security prison, known as the Farm Unit, is located outside the walls surrounding the main prison at BSP.

After leaving the Committee, Torres, a paranoid schizophrenic, entered a delusional state and became convinced that placement in the Farm Unit would harm him. He asked defendant Percy Garner, the prison guard escorting him from the Committee hearing, if he could return to the Committee and ask for reconsideration of his reassignment. After his request was denied, Torres informed Garner that if he was reassigned to the Farm Unit he would try to escape. Garner authored a disciplinary report based on Torres's statement, charging him with violating New Jersey Administrative Code S 10A:4-4.1(a)*.102 (attempting to plan an escape). As a result, Torres was placed in pre-hearing detention. He subsequently requested and received a consultation with defendant Lisa Little, the staff psychologist, who determined that he was mentally fit for the general prison population.

On July 19, 1993, defendant Lance Meehan, a hearing officer, conducted a disciplinary hearing with regard to the escape charge against Torres. Meehan found Torres guilty of attempting to plan an escape, sentenced him to 15 days of disciplinary detention and 120 days of administrative segregation, and referred him for a psychological evaluation. Meehan did not revoke any of Torres's good-time credits.

Torres appealed Meehan's decision to defendants E. Calvin Neubert and Conrad Dilks, the Prison Administrators, who affirmed it. Torres did not appeal to the New Jersey Superior Court, Appellate Division, as permitted under New Jersey Court Rule 2:2-3(a)(2). 2

---

2. Because of the strong state interest in internal prison administration, see, e.g., Pernsley v. Harris, 474 U.S. 965, 966-67 (1985) (Burger, Rehnquist, and O'Connor, JJ., dissenting from denial of certiorari); Harris v. Pernsley, 758 F.2d 83 (3d Cir. 1985) (Adams, Hunter, Weis, Garth & Becker, JJ., dissenting from denial of petition for rehearing en banc), and because Torres failed to complete state appellate review

procedures before bringing his S 1983 action, Judge Roth would abstain

On December 12, 1993, Torres was released from custody. A year and a half later, he filed a pro se S 1983 action in the United States District Court for the District of New Jersey, alleging that the defendants acted unlawfully in connection with the disciplinary decision.3 He subsequently retained counsel and filed an amended complaint on June 24, 1996. In that complaint, Torres alleged that William Fauver (the Commissioner of the New Jersey Department of Corrections), Meehan, Neubert, and Dilks violated his right to due process because he was found guilty of the disciplinary charge and sanctioned even though the charge was not supported by substantial evidence. He also alleged Eighth Amendment violations that are not pertinent here.

On January 16, 1998, the defendants moved for summary judgment. On September 29, 1998, the District Court granted summary judgment in favor of Fauver, Meehan, Neubert, and Dilks on Torres's due process claim, and denied Torres's cross-motion for summary judgment against Meehan. The Court relied on Edwards v. Balisok, 520 U.S. 641 (1997), to find that Torres's claim was not cognizable because its success necessarily would imply the invalidity of the disciplinary decision to place him in

_____

from providing a federal forum for Torres's due process claim. See Younger v. Harris, 401 U.S. 37 (1971); O'Neill v. City of Philadelphia, 32 F.3d 785 (3d Cir. 1994). She does not, however, disagree with the panel's analysis of the merits.

Judges Ambro and Fuentes believe that the comity concerns underlying Younger abstention do not apply because the State willingly submitted to federal-court jurisdiction at every stage of this litigation, and never asked any federal court to abstain from adjudicating Torres's claims. See Morales v. Trans World Airlines, 504 U.S. 374, 381 n.1 (1992); Swisher v. Brady, 438 U.S. 204, 213 n.11 (1978); Winston v. Children and Youth Services of Delaware County, 948 F.2d 1380, 1384–85 (3d Cir. 1991); McLaughlin v. Pernsley, 876 F.2d 308, 314 n.5 (1989).

3. Because Torres filed the current lawsuit before Congress enacted the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), the PLRA's requirement that prisoners must exhaust available administrative remedies before challenging prison conditions under S 1983, see 42 U.S.C. S 1997e(a), did not bar his suit.

detention and administrative segregation. In addition, the Court dismissed Torres's Eighth Amendment claims against all of the defendants except Neubert and Dilks. After further discovery, on June 29, 1999, the Court granted summary judgment in favor of Neubert and Dilks on the remaining claims. Torres filed a timely notice of appeal, and

we subsequently appointed pro bono counsel for him.[4]

Torres's sole claim on appeal is that the District Court erred in concluding that the favorable termination rule bars a former prisoner from using S 1983 to challenge a prison disciplinary sanction that did not affect the length of his confinement. We have jurisdiction under 28 U.S.C.S 1291.

II. Standard of Review

We must review the record to determine whether the District Court properly concluded that there was no genuine issue of material fact and that the defendants were entitled to judgment as a matter of law. Bushman v. Halm, 798 F.2d 651, 656 (3d Cir. 1986). We exercise plenary review over the District Court's choice and interpretation of legal precepts as well as its application of those precepts to the historical facts. Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc., 222 F.3d 123, 129 (3d Cir. 2000).

III. Section 1983 and Prison Disciplinary Sanctions

Whether Torres's due process claim is cognizable under S 1983 raises two separate questions: whether the favorable termination rule applies to prison disciplinary sanctions that do not affect the fact or length of a prisoner's confinement, and, more generally, whether the rule applies to persons who cannot seek habeas relief. Only if both questions are answered affirmatively does the favorable termination rule bar Torres's claim; if the answer to either question is no, his claim is cognizable.

With respect to the first question, the Supreme Court has

---

4. We acknowledge with appreciation the able and zealous pro bono representation of Torres by Philip N. Yannella, Esquire.

consistently distinguished between claims that necessarily implicate the fact or duration of confinement (which it has repeatedly held are subject to the favorable termination rule) and claims that relate only to the conditions of incarceration (which it has not suggested are subject to the favorable termination rule). Edwards v. Balisok , 520 U.S. 641, 646-48 (1997); Heck v. Humphrey, 512 U.S. 477, 486-87 (1994); Preiser v. Rodriguez, 411 U.S. 475, 499 (1973). This line of cases instructs, and all but one of the circuit courts to consider the issue have held, that both current and former prisoners can use S 1983 to raise claims relating only to the conditions, and not the fact or duration, of their confinement without satisfying the favorable termination rule. Because Torres raises such a claim (and thus the answer to the first question above is no), we need not consider the second, broader question of whether the favorable termination rule applies to persons unable to petition for a writ of habeas corpus.[5]

5. In Spencer v. Kemna, 523 U.S. 1 (1998), five Justices announced in dicta that they would hold that the favorable termination rule applies only to prisoners who can assert their claims in a habeas proceeding. The issue in Spencer was whether a prisoner's habeas petition, which sought to invalidate an order revoking his parole, still presented an Article III case or controversy after his reincarceration ended. Eight Justices held that it did not. 523 U.S. at 7, 14-18. In an attempt to demonstrate an injury-in-fact, the prisoner argued that his habeas petition could not be moot because, if it were, Heck's favorable termination rule would bar him from bringing a S 1983 action, and he would be left without any federal forum in which he could seek redress for the parole revocation. Id. at 17. The opinion of the Court dismissed the prisoner's contention as "a great non sequitur, unless one believes (as we do not) that a S 1983 action for damages must always and everywhere be available." Id.

However, five Justices--four in a concurrence, one in a dissent-- expressly rejected the majority's "great non sequitur" dictum and said that the favorable termination rule applies "only[to] inmates seeking S 1983 damages for unconstitutional conviction or confinement." Id. at 20-21 (Souter, J., concurring, joined by O'Connor, Ginsburg & Breyer, JJ.) (emphases added); id. at 25 n.8 (Stevens, J., dissenting) (agreeing with Justice Souter's position). Current and former prisoners who cannot seek habeas relief, they said, can bring a S 1983 claim without satisfying the favorable termination rule even if they are challenging the legality of their conviction or the fact or duration of their confinement. Id. at 21.

7

A.

In Preiser, the first case to address the overlap between S 1983 and the federal habeas laws, state prisoners deprived of good-time credits as a result of disciplinary proceedings sought restoration of the credits, which would have resulted in their immediate release, underS 1983. 411 U.S. at 476-77. The Supreme Court held that in light of the specific federal remedy provided by 28 U.S.C. S 2254, the prisoners' request for injunctive relief was not cognizable under the broad language of S 1983. Id.  at 489-90, 500. The Court explained that "state prisoners attacking the validity of the fact or length of their confinement" must proceed in federal court under the habeas laws, which expressly require exhaustion of adequate state remedies, and may not use S 1983 to circumvent this requirement.6 Id. at 489-90. However, the Court emphasized that "a S 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." Id. at 499.

Since Spencer, the Second and Seventh Circuits have adopted this position. DeWalt v. Carter, 224 F.3d 607, 617-18 (7th Cir. 2000) (relying on Spencer to overrule Anderson v. County of Montgomery, 111 F.3d 494, 499 (7th Cir. 1997), which held that Heck barred a former prisoner from challenging his conviction in a S 1983 suit even if he could not seek

habeas relief); Leather v. Eyck, 180 F.3d 420, 424 (2d Cir. 1999) (holding that Heck did not bar a plaintiff who was convicted and fined--but not imprisoned--from alleging selective prosecution under S 1983 because he was never in custody and thus could not seek habeas relief). But see Randell v. Johnson, 227 F.3d 300, 300-01 (5th Cir. 2000) (per curiam) (holding that Heck barred a former prisoner from alleging under S 1983 that he was improperly made to serve two sentences for the same offense because he was not given credit for his initial prison stay); Figueroa v. Rivera, 147 F.3d 77, 80-81 (1st Cir. 1998) (holding that Heck barred the heirs of a prisoner who died in custody from challenging his conviction and imprisonment under S 1983).

As noted, this case does not require us to consider the broader question of whether a S 1983 remedy must be available where habeas relief is not.

6. Section 1983 plaintiffs need not exhaust state remedies. Patsy v. Bd. of Regents of Fla., 457 U.S. 496, 501 (1982).

Damages are not available in habeas proceedings, so Preiser left open whether a prisoner can use aS 1983 damages action to challenge the constitutionality of his conviction. The Supreme Court addressed this issue in Heck, where a state prisoner sought damages--but not speedier release--under S 1983, alleging that his conviction was obtained through unlawful investigatory practices and the destruction of exculpatory evidence. 512 U.S. at 479. It held that the prisoner had no cause of action underS 1983 because the success of his suit would effectively invalidate his underlying conviction and sentence. Id. at 486-87, 490. The Court reasoned that the prisoner's action was analogous to the common-law tort of malicious prosecution, an essential element of which is that the prosecution terminated in the accused's favor. Id. at 484. This requirement eliminates the potential for conflicting resolutions arising from parallel civil and criminal proceedings, and prevents a prisoner from mounting a collateral attack on his conviction. Id. (citations omitted).

The Heck Court concluded that the principle that civil tort actions cannot be used to undermine "outstanding criminal judgments applies to S 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution." Id. at 486. Heck thus adopted the favorable termination rule: if the success of a S 1983 damages suit "would necessarily imply the invalidity of his conviction or sentence," the plaintiff 's claim is cognizable only if he can prove that his conviction or sentence was reversed, invalidated, or called into question by a grant of federal habeas corpus relief. Id. at 486-87 (emphasis added).7 On the other hand, "if the district court determines that the plaintiff 's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should

7. Stated from a statute-of-limitations perspective, "a S 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." Id. at 489-90.

be allowed to proceed, in the absence of some other bar to the suit." Id. at 487 (footnotes omitted) (emphasis in original).8

In Edwards, the Supreme Court applied Heck's favorable termination rule to prison disciplinary sanctions that affect the duration of a prisoner's incarceration. The case involved a state prisoner who lost 30 days of good-time credits and was placed in restrictive settings (isolation for 10 days, segregation for 20) after a hearing officer found him guilty of violating prison rules. 520 U.S. at 643. Alleging that the officer was biased against him and dishonestly suppressed exculpatory evidence, the prisoner sought declaratory relief and damages9 under S 1983. Id. at 643, 647. In contrast to Heck, where the prisoner directly attacked the constitutionality of his conviction, the prisoner in Edwards did not seek restoration of his good-time credits, and thus did not request relief that would alter the term of his confinement. Id. at 643-44. Nevertheless, the Court held that his claims were not cognizable under S 1983 because "[t]he principal procedural defect" he alleged (the bias of the hearing oficer) "would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." Id. at 646-48. Importantly, nothing in Edwards indicates that the favorable termination rule would have applied if the prisoner's sanction had not affected the duration of his confinement. Indeed, the Court carefully framed the question presented as "whether a claim for damages and declaratory relief brought by a state prisoner challenging the validity of the procedures used to deprive him of good-time credits is cognizable under S 1983." Id. at 643.

_____

8. Foreshadowing his Spencer opinion, see supra note 5, Justice Souter, joined by three other Justices, concurred in the judgment to caution that the Court's broadly worded decision should not be read to impose a favorable termination requirement on persons who cannot seek habeas relief, lest those persons be rendered unable to redress a violation of their federal constitutional rights in any federal forum. Id. at 500-03.

9. The prisoner also requested an injunction designed to bar prison officials from suppressing evidence in the future, but the Supreme Court did not consider this issue because it was neither raised before it nor considered by the lower courts. Id. at 648-49.

B.

Other circuit courts' decisions and a recent ruling by our Court show that the favorable termination rule does not apply to prison disciplinary sanctions that affect only the

conditions, and not the fact or duration, of a prisoner's confinement. In Brown v. Plaut, 131 F.3d 163 (D.C. Cir. 1997), the D.C. Circuit held that a prisoner could seek damages under S 1983 for allegedly being placed in administrative segregation without due process. 10 Id. at 167-68. The Court explained that "[t]he [Supreme] Court has never deviated from Preiser's clear line between challenges to the fact or length of custody and challenges to the conditions of confinement." Id. at 168. It noted that Edwards "repeatedly characteriz[ed] the plaintiff 's claim as one that would necessarily imply the invalidity of the deprivation of his good-time credits" and that Heck "observed that the damages action in that case was in effect an attack on the fact or length of confinement." Id. (internal quotation marks and citations omitted); see also Anyanwutaku v. Moore, 151 F.3d 1053, 1055-56 (D.C. Cir. 1998) (holding that a prisoner's claim that prison officials miscalculated his parole eligibility date was cognizable under S 1983 because "D.C. parole decisions are entirely discretionary" and the success of the claim thus would not necessarily accelerate the prisoner's release). 11

_____

10. The plaintiff was a former prisoner, Brown, 131 F.3d at 165, but that did not factor into the D.C. Circuit's analysis.

11. The D.C. Circuit also noted that the Supreme Court's 1995 opinion in Sandin (which we discuss below) did not question a prisoner's use of S 1983 to challenge disciplinary proceedings that affected only the conditions of his confinement. Brown, 131 F.3d at 168. However, the disciplinary sanction in Sandin was expunged, albeit before the prisoner brought his S 1983 action. 515 U.S. at 476. In addition, the D.C. Circuit reasoned that Heck was distinguishable because the former prisoner was challenging a decision that "bears little resemblance to a judicial proceeding." Brown, 131 F.3d at 168. Because decisions to place inmates in administrative segregation are subject to greatly relaxed procedural requirements, they "would almost certainly be accorded no collateral estoppel effect," and thus "hardly need[ ] to be insulated from collateral attack." Id. However, the same could be said of the disciplinary sanction in Edwards, which the D.C. Circuit did not distinguish on this point.

Similarly, in Jenkins v. Haubert, 179 F.3d 19 (2d Cir. 1999), the Second Circuit held that a prisoner could seek damages and injunctive relief under S 1983 for being sentenced to "keeplock," a particularly strict form of administrative segregation, allegedly in violation of due process.12 Id. at 20-21. The Court agreed with the D.C. Circuit that Heck and Edwards do not bar a prisoner from using S 1983 to challenge a prison disciplinary sanction that did not affect the fact or length of his confinement. Id. at 27. The Second Circuit explained that Preiser "assumed" that prisoners could challenge being placed in disciplinary segregation under S 1983, and that neither Heck nor Edwards suggested that the favorable termination rule applies when the fact or duration of a prisoner's incarceration is not implicated.13 Id.

The Seventh Circuit joined the Second and D.C. Circuits
in DeWalt v. Carter, 224 F.3d 607 (7th Cir. 2000), holding
that a state prisoner could seek damages under S 1983 for
being subjected to a disciplinary sanction that cost him his
prison job, allegedly based on his race and in retaliation for
activities protected by the First Amendment. Id.  at 611,
613. The Court explained that, unlike Preiser , Heck, and
Edwards, the prisoner's claims did not relate to the fact or
duration of his confinement.14Id. at 616-17; accord Sheldon
v. Hundley, 83 F.3d 231, 234 (8th Cir. 1996) (stating in
dicta that "prisoners who challenge disciplinary rulings that
do not lengthen their sentence are probably outside the
habeas statute and able to seek damages under S 1983
without showing favorable termination").

---

12. As in Brown, the Jenkins plaintiff was a former prisoner, 179 F.3d at
20, but the Second Circuit held that the same analysis applies
regardless whether a S 1983 plaintiff remains in custody. Id. at 21.

13. While the Second Circuit also relied on the dicta in Spencer, it noted
that its holding was fully supported by the D.C. Circuit's reasoning in
Brown. Jenkins, 179 F.2d at 27.

14. DeWalt, relying in part on the dicta in Spencer, overruled Stone-Bey
v. Barnes, 120 F.3d 718, 721 (7th Cir. 1997), which held that, under
Heck and Edwards, the favorable termination rule applies to prison
disciplinary sanctions even though they do not affect the fact or length
of a prisoner's confinement. DeWalt, 224 F.3d at 617-18.

12

Most recently, we held in Leamer v. Fauver, No. 98-6007,
2002 WL 624068 (3d Cir. Apr. 19, 2002), that a sex
offender incarcerated indefinitely at a specialized treatment
center could bring a S 1983 suit alleging that state officials
violated his constitutional rights by placing him on
restrictive status and depriving him of therapy. 15 Id. at *7-9.
We explained that the favorable termination rule applies
only if a prisoner's claim necessarily implicates the fact or
duration of his confinement. Id. at *7. Although the
disciplinary sanction prevented the offender from obtaining
treatment that might expedite his release, it did not
necessarily affect the length of his incarceration, and thus
Heck and Edwards did not apply. Id.  at *7-8.16

---

15. Our research reveals that only one circuit court continues to insist
that the favorable termination rule applies to claims that implicate only
the conditions of a prisoner's confinement. In Huey v. Stine, 230 F.3d
226 (6th Cir. 2000), the Sixth Circuit held that Heck and Edwards
barred a prisoner from alleging under S 1983 that his Eighth Amendment
rights were violated when he was put in detention and stripped of
privileges for thirty days. Id. at 228, 230. Relying on its prior
unpublished opinions, the Court failed to consider whether it mattered
that the disciplinary measures at issue did not affect the duration of the
prisoner's incarceration. Id. at 228-29. The Sixth Circuit did not explain
why it disagreed with every other court of appeals to address this issue.
We believe that Huey's extension of Heck  and Edwards to claims that

relate only to prison conditions is unwarranted. The Supreme Court has never questioned Preiser's statement, see 411 U.S. at 499, that prisoners can challenge the conditions of their confinement under S 1983, and the primary concern underlying Heck and Edwards (the possibility that prisoners will use S 1983 to attack collaterally the fact or duration of their confinement) does not apply when the underlying disciplinary sanction relates only to the conditions of a prisoner's incarceration.

16. Cf. Neal v. Shimoda, 131 F.3d 818, 824 (9th Cir. 1997) (holding that prisoners could use S 1983 to challenge being compelled to participate in a sex offender treatment program as a prerequisite for parole eligibility); Georgevich v. Strauss, 772 F.2d 1078, 1087 (3d Cir. 1985) (en banc) (holding that prisoners can contest parole procedures under S 1983 where the success of their claims would not necessarily affect "the actual duration of [their] confinement").

13

C.

In this context, we hold that Torres's due process claim is cognizable under S 1983. Preiser concluded that a prisoner may use S 1983 to attack "the conditions of his prison life," 411 U.S. at 499, and both Heck and Edwards adhered to "Preiser's clear line between challenges to the fact or length of custody and challenges to the conditions of confinement." Brown, 131 F.3d at 168. The favorable termination rule does not apply when a prisoner'sS 1983 claims can implicate only the conditions, and not the fact or duration, of his confinement. This is regardless whether he remains in custody, as in Leamer, 2002 WL 624068, at *7, and DeWalt, 224 F.3d at 616-17, or is no longer in custody, as in Jenkins, 179 F.3d at 27, and Brown, 131 F.3d at 168. Torres's claim challenges the procedures by which he was sentenced to disciplinary detention and administrative segregation. Because these punishments did not alter the length of his incarceration, the success of his claim would not "necessarily imply the invalidity of " the fact or duration of his confinement. Edwards, 520 U.S. at 646; Heck, 512 U.S. at 486-87. Thus the District Court erred in concluding that the favorable termination rule barred Torres from proceeding under S 1983.

IV. No Violation of Protected Liberty Interest

Although Torres's due process claim is cognizable under S 1983, to survive summary judgment he had to present evidence that he suffered a violation of a liberty interest protected by the Constitution's Due Process Clause. Because he did not, we affirm.

A protected liberty interest in avoiding prison disciplinary sanctions can arise either from the Due Process Clause itself or from state law. Asquith v. Dep't of Corrections, 186 F.3d 407, 409 (3d Cir. 1999) (citation omitted). No liberty interest traced from the Due Process Clause is implicated if "the conditions or degree of confinement to which a prisoner is subjected [are] within the sentence imposed upon him" and do not otherwise violate the Constitution.

Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002) (internal quotation marks and citations omitted). In other

words, where there is no state-created liberty interest, the Due Process Clause applies only if the restraints at issue exceed the prisoner's sentence "in such an unexpected manner as to give rise to protection by the Due Process Clause of [their] own force" and do not violate any other constitutional provision. Sandin v. Conner, 515 U.S. 472, 484 (1995). Because disciplinary detention and "administrative segregation [are] the sort[s] of confinement that inmates should reasonably anticipate receiving at some point in their incarceration," Torres's transfer to "less amenable and more restrictive quarters" did not implicate a liberty interest protected by the Due Process Clause. Hewitt v. Helms, 459 U.S. 460, 468 (1983); Fraise , 283 F.3d at 522.

Nor was Torres deprived of any state-created liberty interest. In Sandin, the Supreme Court sharply curtailed the situations in which the negative implications of mandatory language in state laws or regulations can create a protected liberty interest in the prison context. The case involved a prisoner's claim that Hawaii prison officials deprived him of due process when they charged him with misconduct and, following a hearing, placed him in disciplinary segregation in the "Special Holding Unit" for 30 days. Id. at 475-76. The Ninth Circuit Court of Appeals concluded that because a prison regulation in Hawaii required that substantial evidence must support a misconduct charge, the prisoner was deprived of a protected liberty interest if he was put in segregation pursuant to a decision lacking such evidentiary support. Id. at 476-77. The Supreme Court reversed, explaining that the focus must be on the nature of the deprivation, not merely on the language of state laws and regulations. Id. at 481-84. The Court explained that mandatory language in a state law or regulation can create a protected liberty interest only if the alleged deprivation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. The Court determined that because the plaintiff 's confinement "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and because inmates in the general population at the plaintiff 's prison experienced "significant amounts of 'lockdown time,' " the

prisoner was not deprived of a protected liberty interest. Id. at 486.

Sandin instructs that whether the restraint at issue "imposes atypical and significant hardship" depends on the particular state in which the plaintiff is incarcerated. Id. We recently held in Fraise that New Jersey prisoners were not

deprived of a protected liberty interest when they were placed in the "Security Threat Group Management Unit" ("STGMU"), an especially harsh form of administrative detention "designed to isolate and rehabilitate gang members."17 283 F.3d at 509, 522-23. Prisoners placed in the STGMU were consigned to "maximum custody" until they completed a "three-phase behavior modification and education program," in which they learned, inter alia, non-violent methods of conflict resolution. Id. at 511. If a prisoner refused to renounce his affiliation with all "security threat groups," he would remain in the STGMU indefinitely. Id. at 511. Among other restrictions, inmates transferred to the STGMU were allowed just five hours per week outside their cells, were strip-searched every time they exited or reentered their cells, could shower or shave only every third day, were banned from regular prison programs, and were prohibited from corresponding with any other inmate. Id. at 523 n.1 (Rendell, J., dissenting). We held that these "additional restrictions" did "not impose an atypical and significant hardship in relation to the ordinary incidents of prison life," and thus did not implicate a protected liberty interest. Id. at 522-23 (citations omitted).18

_____

17. Judge Rendell dissented on a different issue, but agreed with the majority's analysis of the due process issue. Id. at 530 n.13 (Rendell, J., dissenting).

18. Cf. Leamer, 2002 WL 624068, at *9-10 (holding that sex offender had a protected liberty interest in obtaining treatment that was "mandated and promised" by New Jersey's "unique statutory scheme" for incarcerating sex offenders, was "an inherent and integral element of the scheme," and was "inextricably linked" to the duration of his confinement); Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000) (holding that a Pennsylvania prisoner who was kept in administrative custody for eight years and denied contact with any humans aside from corrections officers during that period--a form of "permanent solitary confinement" that the State conceded was virtually "unique" within its prison system-- was deprived of a protected liberty interest).

16

Under Sandin and Fraise, we cannot say that Torres has alleged "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Sandin, 515 U.S. at 486. "Sandin instructs that placement in administrative confinement will generally not create a liberty interest." Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000) (citation omitted). Torres was placed in disciplinary detention for 15 days and administrative segregation for 120 days in a State where prisoners have no protected liberty interest in being free of indefinite confinement in the STGMU. See Fraise, 283 F.3d at 522-23; cf. Griffin v. Vaughn, 112 F.3d 703, 706-08 (3d Cir. 1997) (holding that a Pennsylvania prisoner did not have a protected liberty interest in avoiding being placed in administrative custody for 15 months because such lengthy stays were not atypical in Pennsylvania's penal system). Therefore, Torres was not deprived of a protected liberty

interest, and we affirm the District Court's grant of summary judgment for that reason.

Conclusion

Because Torres's due process claim implicated only the conditions, and not the fact or duration, of his confinement, the District Court erred in ruling that the claim was not cognizable under S 1983. However, summary judgment was appropriate because Torres was not deprived of a protected liberty interest. We therefore affirm.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

17