OPINION
PER CURIAM.
Michael Jackson, a federal prisoner proceeding pro se, appeals from the District Court’s order denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the following reasons, we will affirm.
I.
Jackson is currently incarcerated in the Federal Correctional Institution at Schuylkill (“FCI-Sehuylkill”) in Minersville, Pennsylvania. On April 12, 2005, Jackson was confined in the Special Housing Unit (SHU) at FCI-Schuylkill. At approximately 7:25 p.m. that day, Senior Officer J. O’Boyle approached Jackson in his cell, and ordered him to provide a urine sample. Jackson, however, refused. As a result, Officer O’Boyle gave him a glass of water, instructed him to drink it, and told him that he would return in two hours to collect the urine sample. When the officer returned, however, Jackson still refused to cooperate.
The next day, Jackson received notice that he was being charged with “refusing to provide a urine sample or take part in other drug abuse testing” in violation of Section 110 of the Bureau of Prisons’ (“BOP”) disciplinary code. (Response to Petition for Writ of Habeas Corpus, Dkt. # 6, Attachment C.) Jackson’s Unit Disciplinary Committee then conducted an investigation into the charges. The Committee determined that Jackson had been properly charged, and referred the matter to the Disciplinary Hearing Officer (“DHO”). (Response to Petition for Writ of Habeas Corpus, Dkt. # 6, Attachment C.)
Jackson appeared for a hearing before the DHO on May 2, 2005. At the hearing, Jackson testified that, due to an incident in 1974 in which someone “clocked him from behind” while he was “taking a piss,” he was unable to urinate in front of other people. (Response to Petition for Writ of Habeas Corpus, Dkt. # 6, Attachment E.) The prison’s chief psychologist, Dr. G. Londis, also testified at the hearing, but he indicated that nothing in Jackson’s record suggested that he had ever been diagnosed with, or treated for, a “shy bladder.” (Response to Petition for Writ of Habeas Corpus, Dkt. # 6, Attachment E.)
Following the hearing, the DHO found that Jackson had violated BOP Code Section 110 by refusing to provide a urine sample. In reaching this conclusion, the DHO noted that Jackson had a history of refusing to provide urine samples, that his medical records did not include any documentation of the alleged condition, and that the staff members who had investigated the charge were credible. The DHO sanctioned Jackson with: (1) disciplinary segregation; (2) disallowance of 54 days of good conduct time; (3) forfeiture of 352 days of non-vested good conduct time; and (4) loss of phone and visiting privileges for a period of one year. (Response to Petition for Writ of Habeas Corpus, Dkt. # 6, Attachment E.)
Jackson sought review of the DHO’s decision in the Northeast Regional Office. In support of his appeal, Jackson submit *835 ted a report by Dr. Glenn D. Walters, a clinical psychologist, who opined that Jackson’s medical records contained “some support” for his story. (Response to Petition for Writ of Habeas Corpus, Dkt. # 6, Attachment L.) Based on this new evidence, the Northeast Regional Office remanded the matter back to the DHO for rehearing.
Upon rehearing, the DHO considered Dr. Walters’s report, which stated that, in his view, “Jackson does have genuine concerns about urinating in front of others that can be traced back to a specific traumatic incident.” (Response to Petition for Writ of Habeas Corpus, Dkt. # 6, Attachment L.) Thus, Dr. Walters recommended that “some degree of flexibility be exercised when attempting to get a urine [sample] from this inmate.” (Response to Petition for Writ of Habeas Corpus, Dkt. # 6, Attachment L.) Dr. Walters cautioned, however, that his recommendation was not intended to excuse Jackson from participating in the urine surveillance program. (Response to Petition for Writ of Habeas Corpus, Dkt. # 6, Attachment L.)
After considering the evidence presented at both the initial hearing and the rehearing, the DHO again concluded that Jackson had committed a Code 110 violation. In so concluding, the DHO again relied on Officer O’Boyle’s testimony and Jackson’s history of refusing to provide urine samples. (Response to Petition for Writ of Habeas Corpus, Dkt. # 6, Attachment K.) The DHO also considered Dr. Walters’s opinion and found that Officer O’Boyle had in fact demonstrated “flexibility” with Jackson by offering him additional fluids during the procedures. (Response to Petition for Writ of Habeas Corpus, Dkt. # 6, Attachment K.) Accordingly, the DHO re-imposed the previously issued sanctions. Jackson’s administrative appeals from the DHO’s decision were unsuccessful.
II.
On January 7, 2008, Jackson filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 alleging that his due process rights had been violated during the disciplinary process. Specifically, Jackson claimed that: (1) the DHO’s decision was not supported by the evidence; (2) the prison’s investigation into the charge was insufficient; and (3) the DHO’s sanctions were too harsh. By order entered August 28, 2008, 2008 WL 4148243, the District Court denied the petition.[1] Williams now appeals from the District Court’s order.
III.
We have jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291 and 2253(a). We review a District Court’s legal conclusions de novo and its factual findings for clear error. See, e.g., Ruggiano v. Reish, 307 F.3d 121, 126 (3d Cir.2002) (“In reviewing a federal habeas judgment, ‘we exercise plenary review over the district court’s legal conclusions and apply a clearly erroneous standard to its findings of fact.’”) (quoting Rios v. Wiley, 201 F.3d 257, 262 (3d Cir.2000)).
It is well established that “[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.” Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison *836 disciplinary proceedings when, as in this case, a prisoner’s good-time credit is at stake.[2] Id. at 557, 94 S.Ct. 2963. Specifically, when good-time credit is at stake, a prisoner is entitled to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67, 94 S.Ct. 2963. “[Revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record.” Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (internal quotation and citation omitted).
Upon review, we agree with the District Court that Jackson received all the process that he was due during the disciplinary proceedings. The record reveals that Jackson was given prior written notice of the charges against him in accordance with 28 C.F.R. § 541.17(a); that he was provided the opportunity to call witnesses and present documentary evidence in his defense; and that he was issued a written decision setting forth the evidence relied on, and the reasons for, the disciplinary action. See Wolff, 418 U.S. at 563-67, 94 S.Ct. 2963.
Furthermore, the DHO’s findings were clearly supported by “some” evidence in the record. In his report, DHO Kevin Bittenbender noted that his decision was based upon the following inculpatory evidence: Officer O’Boyle’s account of the incident in the incident report; a memorandum from Officer O’Boyle in which he noted that, since the time of the incident, he has obtained urine samples from Jackson without difficulty; Jackson’s past history of refusing to provide urine samples; and the absence of any medical documentation reflecting Jackson’s condition. We agree with the District Court that this evidence is sufficient to support the outcome of the hearing and meets the requirements imposed by the Due Process Clause. See Hill, 472 U.S. at 454, 105 S.Ct. 2768.[3]
Finally, insofar as Jackson argues that the loss of 406 days of good time credit was excessive in violation of the Eighth Amendment, we agree with the District Court that this sanction does not constitute an Eighth Amendment violation because it is within the limits prescribed for Jackson’s offense, see 28 C.F.R. § 541.13, and it is not disproportionate to the severity of the offense, Rummel v. Estelle, 445 U.S. 263, 271-74, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).
IV.
Accordingly, we will affirm the District Court’s order denying Jackson’s petition for writ of habeas corpus. Jackson’s motion for appointment of counsel is denied.

. The District Court declined to address the government's argument that Jackson had failed to properly exhaust his administrative remedies, and instead based its denial on the merits of Jackson’s claims.

. While the Due Process Clause protects against the revocation of good-time credit, it does not provide the same level of protection against the other forms of discipline that Jackson received. See Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir.2002) (citing Sandin v. Conner, 515 U.S. 472, 486, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

. We need not reach Jackson’s remaining challenges to the disciplinary proceedings because, as discussed above, any error in these proceedings will not result in a due process violation as long as Jackson was provided with the process that he is due under Wolff.