DLD-255                                                        NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1278
_____

SHAROB ABDUL-AZIZ,
                                  Appellant

v.

MICHELE RICCI; ADMINISTRATOR NEW JERSEY STATE PRISON;
DONALD MEE, ASSISTANT ADMINISTARTOR AT NEW JERSEY STATE
PRISION IS BEING SUED IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;
WILLIAM MOLEINS, CAPTAIN AND ACTING DIRECTOR OF CUSTODY
AT NEW JERSEY STATE PRISON IS BEING SUED IN HIS
INDIVIDUAL AND OFFICIAL CAPACITY;CLAY MCCLAIN,
SERGEANT AT NEW JERSEY STATE PRISON
IS BEING SUED IN HIS INDIVIDUAL AND OFFICIAL CAPACITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-08-cv-05764)
District Judge:  Honorable Mary L. Cooper
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
May 15, 2014
Before:  SMITH, HARDIMAN and NYGAARD, Circuit Judges

(Opinion filed: June 16, 2014)
_____

OPINION
_____

PER CURIAM

Sharob Abdul-Aziz, proceeding pro se and in forma pauperis, appeals from the District Court's order granting the defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). For the reasons set forth below, we will summarily affirm.[1]

I.

Sharob Abdul-Aziz, a New Jersey prisoner, filed an amended complaint pursuant to 42 U.S.C. § 1983, naming as defendants various officials and employees of the New Jersey State Prison ("NJSP"). The complaint alleged that Muslim inmates were prevented from practicing their religion, and that Abdul-Aziz was retaliated against for trying to rectify the unfair treatment. The alleged retaliation involved a nine-day assignment to temporary close custody ("TCC") and transfer to an institutional job that was much lower-paying than his previous position. According to Abdul-Aziz, these actions violated his rights under the First, Eighth, and Fourteenth Amendment. He asked for monetary and injunctive relief.

---

[1] We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291. We may summarily affirm a decision of the District Court if the appeal does not raise a substantial issue. 3d Cir. LAR 27.4; I.O.P. 10.6. We may affirm on any basis supported by the record. Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam). Because Abdul-Aziz is proceeding in forma pauperis, we must dismiss the appeal if it is frivolous. 28 U.S.C. § 1915(e)(2)(B)(i).

The District Court dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) Abdul-Aziz's claims that his job reassignment violated his rights under the Due Process Clause of the Fourteenth Amendment and that his time in the TCC violated his rights under the Due Process Clause and Eighth Amendment, and denied his request for injunctive relief regarding the return of his musical instruments and electronic equipment. The District Court also denied Abdul-Aziz's motion to certify a class of Muslim inmates at NJSP.[2] Following discovery, Abdul-Aziz and the defendants made cross-motions for summary judgment, which the District Court denied with respect to Abdul-Aziz and granted in part and denied in part with respect to the defendants, leaving one claim viable. Counsel was appointed to represent Abdul-Aziz, and after additional discovery, the defendants again moved for summary judgment. The District Court granted the defendants' motion, and Abdul-Aziz timely appealed.

## II.

We exercise plenary review over the District Court's dismissal order. See Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). Dismissal is appropriate where the pleader has not alleged "sufficient factual matter, accepted as true, to state a claim to relief that is

---

[2] We agree with the District Court's reasons for denying these motions and will not address them further.
We review such an action for abuse of discretion, Brown v. City of Pittsburgh, 586 F.3d 263, 268 (3d Cir. 2009), and discern no error in the District Court's denial of Abdul-Aziz's motions for a preliminary injunction. The motion requested relief that was duplicative of that requested by the complaint. Because Abdul-Aziz's complaint was not supported by adequate evidence, he is not entitled to the relief requested.

3

plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted).

Upon review, we conclude that the District Court properly dismissed Abdul-Aziz's claim that conditions during his time in TCC violated his rights under the Eighth Amendment. To establish that one's conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment, a plaintiff must show he was denied "the minimal civilized measure of life's necessities." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010). Although Abdul-Aziz alleged that he was not given a change of clothing, he did not claim that he was forced to go without clothing or that his fundamental needs were not being met. This Court held, in Gibson v. Lynch, 652 F.2d 348 (3d Cir. 1981), that an inmate's incarceration for 90 days in solitary confinement due to prison overcrowding did not violate the Eighth Amendment where his basic needs for nutrition and shelter were being met. Id. at 350, 352. As Abdul-Aziz was in TCC for only nine days, dismissal for failure to state a claim was appropriate.

Furthermore, we agree with the District Court that Abdul-Aziz failed to state a claim for violation of his right to due process under the Fourteenth Amendment following his transfer to TCC. It is well-settled that placement in administrative confinement will generally not create a liberty interest. Sandin v. Conner, 515 U.S. 472, 486 (1995); Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000). Rather, a "liberty interest only exists if that placement is an 'atypical and significant hardship' relative to others similarly sentenced." Leamer v. Fauver, 288 F.3d 532, 546 (3d Cir. 2002) (quoting Sandin, 515

4

U.S. at 484). We have previously held that seven months in disciplinary confinement did not implicate a liberty interest. Smith v. Mensinger, 293 F.3d 641, 645, 654 (3d Cir. 2002). Similarly, disciplinary detention for fifteen days and administrative segregation for 120 days did not implicate a protected liberty interest. Torres v. Fauver, 292 F.3d 141, 151-52 (3d Cir. 2002); cf. Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000) (holding that eight years in administrative custody is atypical and implicates a protected liberty interest). Here, Abdul-Aziz complained of a due process violation based on nine days in TCC. The conditions he complained of reflect typical restrictions in administrative custody. We conclude that the duration and conditions of Abdul-Aziz's segregation cannot be deemed atypical. Accordingly, he does not have a protected liberty interest and was not entitled to procedural due process protection.

Similarly, we agree with the District Court that Abdul-Aziz did not have a protected liberty interest in the institutional job he lost, and that he accordingly failed to state a viable Fourteenth Amendment claim arising from that occurrence. Inmates do not have a liberty or property interest in their job assignments that would give rise to Due Process Clause protection. James v. Quinlan, 866 F.2d 627, 629-630 (3d Cir. 1989).

III.

The remainder of Abdul-Aziz's claims were terminated pursuant to the defendants' motions for summary judgment. We review the District Court's orders granting summary judgment de novo and review the facts in the light most favorable to the nonmoving party. Burns v. Pa. Dep't of Corr., 642 F.3d 163, 170 (3d Cir. 2011). A

grant of summary judgment will be affirmed if our review reveals that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Abdul-Aziz claimed that his right to practice his religion was infringed upon by NJSP's refusal to accept donated Halal meats for use in the inmates' meals, by providing "vegetarian" meals that were not actually vegetarian, and by prohibiting inmates from possessing prayer oil in their cells. He alleged that Jewish inmates were provided Kosher meals for Passover, and Muslim inmates were therefore denied equal protection of the law. He claimed that these policies and practices violated his rights pursuant to the First and Fourteenth Amendments.

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citation omitted). However, an inmate only "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). To determine whether a regulation infringing upon constitutional rights is reasonable, courts apply the four factors set forth in Turner v. Safley, 482 U.S. 78 (1987). These factors require courts to consider: (1) whether the regulation bears a 'valid, rational connection' to a legitimate and neutral government objective; (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact accommodation of the asserted constitutional

6

right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) "the absence of ready alternatives." Id. at 89-90; see also Fraise v. Terhune, 283 F.3d 506, 513-14 (3d Cir. 2002) (citations omitted).

With regard to Abdul-Aziz's Equal Protection claim, "Turner is equally applicable [], and the appropriate analysis for this claim is the same as that for [his] Free Exercise claim." DeHart v. Horn, 227 F.3d 47, 61 (3d Cir. 2000). Generally, prison officials cannot discriminate against inmates of different religions. Cruz v. Beto, 405 U.S. 319 (1972) (per curiam). However, an inmate "cannot obtain relief if the difference between the defendants' treatment of him and their treatment of [inmates of another religion] is 'reasonably related to legitimate penological interests.'" DeHart, 227 F.3d at 61.

We agree with the District Court that no genuine issue of material fact existed in Abdul-Aziz's claim that NJSP's policy regarding Halal meats placed a burden on his religious exercise. Abdul-Aziz claimed that there were donations of Halal meat available for Muslim feast days that the prison refused to accept, but nothing in the record suggests that the consumption of meat, Halal or otherwise, is required for Abdul-Aziz to practice his religion. In his deposition, Abdul-Aziz describes Halal food as "pork-free, wine-free, [and] slaughtered properly . . . . every day this would be your diet." Dkt. No. 43-6, at 59. Vegetarian meals satisfy these requirements. Review of the record indicates that NJSP cannot accept donated meals unless such food is determined to be necessary for the observance of a holy day. Id. at 9. Abdul-Aziz has presented evidence establishing only that

7

any meat eaten by Muslims must be Halal, not that Halal meats must be eaten on feast days. Therefore his First Amendment rights were not violated, nor were his Fourteenth Amendment rights. Jewish inmates received Kosher meals at Passover because they were determined to be necessary for religious observance. Id. Because the vegetarian meals did not violate Islam's proscription on non-Halal meat, while non-Kosher meals would not have met the religious requirements of Passover, reasonable penological interests were served by the differential treatment.

The District Court also correctly determined that no genuine issue of material fact existed with respect to Abdul-Aziz's claim that the vegetarian meals served at NJSP actually contained meat. Abdul-Aziz cited a transcript from a deposition taken in 2001 and a letter from Schreiber Foods stating that trace amount of certain enzymes could be present in School Choice American cheese. Dkt. No. 39-2, at 37-39. Review of the record in this case indicates that the religious vegetarian meals at NJSP are not contaminated. The DOC Regional Food Service Supervisor specified that the religious vegetarian meals at NJSP do not contain meat or American cheese. He also indicated that the meals contain powder cheddar cheese that is not made with meat. Dkt. No. 43-5, at 2. As Abdul-Aziz offered no evidence contrary to this declaration, the grant of summary judgment was proper.

8

The final aspect of Abdul-Aziz's religious claim is that his religious exercise was impeded by NJSP's policy forbidding the possession of oils in cells. NJSP forbids oils (including prayer oils) in cells for security reasons. Dkt. No. 43-3, at 3. Imam Rasoul Suluki, who is permitted to bring such oil into the prison for prayer services, stated in his declaration that while prayer oil is a "custom or recommended practices," it "is not part of the Islamic Fard, which is an obligatory or mandatory practice." Dkt. no. 43-4, at 2. Review of the record did not produce any evidence suggesting that Abdul-Aziz's ability to practice his faith was restricted or that he was prohibited from practicing his religion in any manner. The defendants were therefore entitled to an entry of summary judgment on this claim.

Summary judgment in favor of the defendants was also proper as to Abdul-Aziz's claim of that the defendants retaliated against him by placing him in TCC and reassigning him to a lower-paying institutional job. Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional. See Rauser v. Horn, 241 F.3d 330, 333–34 (3d Cir. 2001). A plaintiff in a retaliation case must prove that: (1) he engaged in constitutionally protected conduct, (2) "he suffered some 'adverse action' at the hands of the prison officials"; and (3) "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision" to take that action. Id. at 333. "Prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id. at 334.

Abdul-Aziz filed grievances regarding various matters from March until August 2008. Dkt. No. 5, at 4-6. On August 15, 2008, prison officials discovered memory cards rolled up in Muslim prayer rugs in a common area of the prison. The memory cards were confiscated as contraband. On August 18, 2008, Abdul-Aziz told prison officials that the memory cards belonged to him. On August 19, 2008, Abdul-Aziz was transferred to TCC status. Dkt. No. 43-1, at 29. The defendants argued in their brief that "Plaintiff would have been placed in TCC, issued the same disciplinary charge, and treated in the same manner even in the absence of his filing grievances and/or complaints." Id. at 28. This statement, along with the chronology following the memory cards' discovery, established a legitimate penological purpose for TCC status, thus precluding the existence of a genuine issue of material fact and entitling the defendants summary judgment on this claim.

Likewise, nothing in the record indicates that Abdul-Aziz's reassignment to a lower-paying institutional job was the result of retaliation, as it was also done for a legitimate penological purpose. Abdul-Aziz was working as a Forms Room file clerk on January 29, 2009, when an NJSP official observed speakers connected to Abdul-Aziz's workstation computer. Music files were stored on the computer, and Abdul-Aziz had listened them on at least one occasion. Dkt. No. 82-1, at ¶¶ 32-33. Inmates are not permitted to download music or games on the computers. As a result, Abdul-Aziz was charged with a disciplinary infraction for misuse of electronic equipment, but it was dismissed because he was not served with the charge within the applicable time limit. Id.

10

at ¶ 50.  However, following the disposition of any infraction, all inmates must go before the Institutional Classification Committee ("ICC"), which may look at the conduct underlying the charge regardless of its outcome.  Id. at ¶¶ 40-41.  The ICC has the discretion to reassign an inmate to a different job if it determines that the safety and security of the facility will be threatened by returning the inmate to the inmate's former work assignment.  Id. at ¶ 43.  Abdul-Aziz met with the ICC on February 11, 2009, and he was subsequently reassigned from Forms Room clerk to cell sanitation.  Id. at ¶ 19.  This reassignment took place nearly three months after he filed a lawsuit and nearly five months after he filed his last complaint.  Abdul-Aziz admitted all of the facts mentioned above in his counter-statement of facts (Dkt. No. 84-2), and therefore there is no genuine issue of material fact as to whether his reassignment served a legitimate penological interest.  Summary judgment in favor of defendants was therefore appropriate regarding this claim as well.

## IV.

There being no substantial question presented on appeal, we will summarily affirm.[3]

---

[3] To the extent Abdul-Aziz requests appointment of counsel in his argument in support of the appeal, that request is denied.