Christopher **MITCHELL,** Plaintiff,

v.

**DEPT. OF CORRECTIONS; Jeffrey A. Beard, Ph.D,; Ben Varner, Warden; and William S. Ward, Chairman of the Parole Board, Defendants.**

No. CIV.A.3:02–CV–2219.

United States District Court, M.D. Pennsylvania.

July 22, 2003.

Francis R. Filipi, Office of Atty. Gen., Harrisburg, PA, for defendant.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

### I

Before the Court is Magistrate Judge J. Andrew Smyser's Report and Recommendation, (Doc. 18), filed on June 5, 2003,

regarding Plaintiff's *pro se* action filed pursuant to 42 U.S.C. § 1983 on December 5, 2002, (Doc. 1). Plaintiff asserts that Defendants violated his constitutional rights because he was held beyond his maximum release date.[1] In his complaint, Plaintiff requested both immediate release from custody and monetary damages. (Doc. 1, History of the Case at 3.)

On February 19, 2003, Defendants filed a Motion to Dismiss and a brief in support of the motion. (Docs.12, 13.) Defendants assert the following grounds for dismissal: 1) the Department and the natural person Defendants are immune from damages by reason of the Eleventh Amendment of the United States Constitution to the extent they are being sued in their official capacities; 2) Plaintiff's claim under 42 U.S.C. § 1983 is not cognizable because he has not obtained a favorable decision concerning the time added to his maximum sentence as a result of parole revocation proceedings; and 3) Plaintiff's claims for injunctive and declaratory relief are moot because he was released from prison on February 9, 2003. Plaintiff filed a Brief in Opposition and a document entitled Motion in Opposition on April 14, 2003. (Docs.16, 17.) Defendants did not file a reply.

The Magistrate Judge recommends that Plaintiff's requests for declaratory and injunctive relief be dismissed as moot, concurring with Defendants that these requests are moot because Plaintiff was released from prison on February 9, 2003. (Doc. 18 at 4.) The Magistrate Judge also recommends that Plaintiff's claims against the Department and the individual Defendants in their official capacities be dismissed based on Eleventh Amendment immunity. (Doc. 18 at 4–5.) The Magistrate Judge does not agree with Defendants that the claims against

them in their individual capacities should be dismissed because such claims are barred by the reasoning of *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). (Doc. 18 at 6.) Rather, the Magistrate Judge concluded that the reasoning of *Heck* does not apply to those who have been released from custody. (Doc. 18 at 16.)

Defendants filed objections to the Magistrate Judge's Report and Recommendation and a Brief in Support of Objections, (Docs.19, 20), on June 19, 2003. Defendants objected on the bases that *Heck* is applicable and Plaintiff has not satisfied the *Heck* requirement that he obtain a favorable decision regarding the re-calculation of his maximum date in order for a § 1983 claim to be cognizable. (Doc. 19 at 2–3.)

## II

■ When a Magistrate Judge makes a finding or ruling on a motion or issue, his determination should become that of the court unless objections are filed. *See Thomas v. Arn*, 474 U.S. 140, 150–53, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). When no objections are filed, the district court need only review a record for clear error prior to accepting a Magistrate Judge's Recommendation. *See Cruz v. Chater*, 990 F.Supp. 375, 376–78 (M.D.Pa.1998). However, when a Petitioner files objections to a magistrate judge's Report and Recommendation, the district judge makes a *de novo* review of those portions of the report or specified proposed findings or recommendations to which objection is made. *See Cipollone v. Liggett Group, Inc.*, 822 F.2d 335, 340 (3d Cir.1987), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987).

---

**1.** Although not named as a Defendant in the body of the complaint, the Pennsylvania Department of Corrections is listed as a Defendant in the caption of the complaint.

Because Defendants have filed objections in this case, we will review *de novo* those portions of the Magistrate Judge's Report and Recommendation to which Defendants object. For the reasons set forth below, we adopt the Magistrate Judge's Report and Recommendation in part, concurring that Plaintiff's request for release is moot, his claim against the Department of Corrections is barred by the Eleventh Amendment and his claims against individual Defendants in their official capacities are also barred by the Eleventh Amendment. We also conclude that Plaintiff's claim for damages against Defendants in their individual capacities cannot go forward. We therefore grant Defendants' Motion to Dismiss.

### III

The documents submitted to the Court in this matter do not present a concise history of charges and sentences for which Plaintiff has been incarcerated periodically since his arrest for murder in 1971. The following summary is derived essentially from Plaintiff's Complaint and attached Exhibits, (Doc. 1), and his response to Defendants' Motion to Dismiss and attached exhibits, (Doc. 18).

Plaintiff received a ten to twenty-year sentence with an effective date of April 27, 1971, on the murder charge. The minimum date on this sentence was April 27, 1981 and the maximum was April 27, 1991. (Doc. 16 Ex. A.)

While serving this sentence, Plaintiff was charged with Possession of Implements of Escape, for which he received a one to two year sentence on January 8, 1975. Apparently this sentence was to run consecutively with Plaintiff's minimum sentence on the murder charge because he began serving the Implements of Escape sentence on April 27, 1981—the minimum date on his murder sentence. (Doc. 16 Ex. B.)

On July 6, 1982, Plaintiff was ordered released on parole (*Id.*) The Order to Release on Parole contained the notation that Plaintiff was to remain on parole until April 27, 1991, the longest remaining maximum on his murder conviction. (Doc. 16 Ex. B.)

In 1986, Plaintiff was arrested for Possession of a Controlled Substance. (Doc. 16 Ex. C.) He was sentenced on April 13, 1987, to a term of six to twelve months in the Dauphin County Prison. (*Id.*)

On July 1, 1987, Plaintiff was returned to the custody of the Pennsylvania Department of Corrections for violating the conditions of parole on his murder sentence. (Doc. 16 at 4.) The Parole Board imposed a one-year term for violation of parole and the Department of Corrections recalculated Plaintiff's maximum date to November 11, 1997. (*Id.*) Plaintiff asserts that the Parole Board rescinded the one year violation of parole penalty after Plaintiff filed an administrative appeal.[2] (*Id.* at 6.)

On January 25, 1988, Plaintiff was reparoled on the murder sentence. (*Id.* at 4)

On July 12, 1988, Plaintiff was arrested on drug charges and, following a plea of guilty to Unlawful Delivery of a Controlled Substance and Criminal Conspiracy, was sentenced on March 28, 1989, to three to ten years, to be served "following completion of the inmate's current sentence." The "current sentence" referred to was

---

**2.** Plaintiff asserts that his appeal was based on *Rivenbark v. Pennsylvania Board of Probation and Parole,* 509 Pa. 248, 501 A.2d 1110 (1985). *Rivenbark* held that a parole violator could not be recommitted to separate terms of back time as both a convicted parole violator and a technical parole violator, where technical violation of parole was based upon the same act which constituted a new crime of which parolee was convicted. *Id.* at 1114.

the remainder of the murder sentence. (Doc. 1 Ex. B.)

Plaintiff asserts that he was reparoled on the murder sentence on April 4, 1990, and began serving his first delivery of a controlled substance sentence. (Doc. 16 at 6.)

On July 20, 1992, Plaintiff was reparoled. (*Id.*)

On February 9, 1993, Plaintiff was again arrested on drug charges and was convicted by a jury on one of three indictments on December 8, 1993. Following the jury verdict, Plaintiff asserts that he pled guilty to the two remaining indictments and entered into a plea agreement that sentences on the three indictments would run concurrently. (Doc. 1 History of the Case ¶ 5.) Plaintiff was sentenced to four to eight years on October 6, 1994, for Delivery of a Controlled Substance. (Doc. 16 at 7.)

On April 22, 1993, the Pennsylvania Board of Probation and Parole rendered a decision requiring Plaintiff to serve twenty-four months backtime for parole violations. (*See* Doc. 1 Ex. j.)

On October 20, 1994, Plaintiff was returned to the custody of the Pennsylvania Department of Corrections for violating the conditions of his parole. Plaintiff asserts that this violation was based on his parole on his first Delivery of a Controlled Substance sentence (July 12, 1988, arrest). (Doc. 16 at 7.) He contends that he was given a six-month term for leaving the district without his parole supervisor's permission to run concurrently with twenty-four months for technical violations (Criminal Conspiracy and Unlawful Delivery of a Controlled Substance). (*Id.; see* Doc. 1 Ex. E.) According to the Board of Parole's decision of February 7, 1995, as of that date Plaintiff's Parole Violation Maximum Sentence was October 6, 2002. (Doc. 1 Ex. E.)

On March 14, 1995, Plaintiff was recommitted to the Parole Board as a convicted parole violator on his murder sentence. (Doc. 16 at 7.)

On August 16, 2002, the Department of Corrections calculated Plaintiff's minimum release date as December 5, 2001, and the maximum date as December 5, 2005. This calculation was based on a start date for the four to eight year Delivery of a Controlled Substance sentence as December 5, 1997. (Doc. 1 Ex. H-1.)

On November 6, 2002, the Department of Corrections recomputed Plaintiff's sentence to have an effective date of February 9, 1995, a minimum date of February 9, 1999, and a maximum date of February 9, 2003. (Doc. 16 Ex. G.)

Plaintiff asserts that, according to the Parole Board's prescriptive plan, Plaintiff's maximum date is February 7, 2001.[3] (Doc. 1 at 1.)

Plaintiff filed his initial grievance on April 4, 2001. Plaintiff received an unfavorable response both to his initial grievance and the appeal thereof. (Doc. 1 Exs. G, H.) On August 1, 2001, Plaintiff's appeal to final review was denied.[4] (Doc. 1 Ex. G.)

The record does not reflect that Plaintiff took any further action on the matter until he filed this 42 U.S.C. § 1983 complaint on December 5, 2002—approximately two

---

**3.** This plan is attached to Plaintiff's Complaint as Exhibit F. However, in the document provided to the Court, Exhibit F is not legible.

**4.** According to Defendants, this recitation of Plaintiff's charges and convictions since 1971 does not present a complete picture of his convictions. (Doc. 20 at 3 n. 3.) Defendants assert that, while incarcerated, Plaintiff also was convicted of prison breach, escape, and assault on a corrections officer. (*Id.*)

months before his maximum sentence was to expire.

Plaintiff was released from custody on February 9, 2003.

## IV

### A. Motion to Dismiss Standard

We agree with the standard set forth by the Magistrate Judge: a motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint; the court must decide whether, even if the plaintiff were able to prove all of his allegations, he would be unable to prevail. (Doc. 18 at 2) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). The burden is on the moving party to show that there is no actionable claim in a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir.1980). When evaluating a motion to dismiss, the court must accept all material allegations of the complaint as true and draw all inferences in the light most favorable to the plaintiff. *Pennsylvania House, Inc. v. Barrett*, 760 F.Supp. 439, 449 (M.D.Pa.1991). "The test in reviewing a motion to dismiss for failure to state a claim is whether, under any reasonable reading of the pleadings, plaintiff may be entitled to relief." *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir.1993) (citation omitted). Finally, it is well-settled that *pro se* complaints should be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

### B. Merits of Plaintiff's Claims

 We review the Magistrate Judge's determinations regarding mootness and Eleventh Amendment Immunity for clear error because no objections were filed on these issues. We find no clear error in the Magistrate Judge's determination that Plaintiff's request for release is moot because he was released on February 9, 2003—approximately two months after filing this action. (Doc. 18 at 3–4.) We also find no clear error in the Magistrate Judge's conclusions that Plaintiff's claim against the Department of Corrections is barred by the Eleventh Amendment and his claims against the individual Defendants in their official capacities are similarly barred. (Doc. 18 at 4–5.) Therefore, Plaintiff's claims regarding release from prison, the Department of Corrections and the individual Defendants in their official capacities will be dismissed.

The sole remaining issue is whether Plaintiff's request for monetary damages can go forward on his claim that he was incarcerated beyond his maximum release date because of a sentence miscalculation despite the fact that Plaintiff has not obtained a favorable decision regarding the calculation of his maximum release date.

The Magistrate Judge reviewed caselaw relevant to this issue and concluded that, because Plaintiff is no longer incarcerated, his § 1983 claim should be allowed to go forward. The Magistrate Judge determined that there is no clear precedent on whether the favorable termination rule of *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), applies to a § 1983 plaintiff who is no longer incarcerated and in light of Supreme Court dicta on the issue in *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), this Court should not bar a § 1983 action brought by a plaintiff who is seeking damages relating to the duration of confinement and is no longer in custody. (Doc. 18 at 16.)

Defendant objects to the Magistrate Judge's finding on the following bases: 1) the *Heck* rationale applies to the instant case; Plaintiff did not obtain a successful determination of his miscalculation claim; and 3) in the absence of guiding Third Circuit Court of Appeals precedent on the

issue of whether a released prisoner's claim based on the duration of his confinement is cognizable under § 1983, the facts of this case do not warrant the Court's finding in Plaintiff's favor. (Docs.19, 20.)

## V

To resolve the issue before us now, we must decide the applicability of *Heck* to the circumstances of the instant case. In *Heck v. Humphrey,* the Court held that [i]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Heck,* 512 U.S. at 487–88, 114 S.Ct. 2364 (emphasis in original). This holding is often referred to as the "favorable termination requirement." *See infra.*

*Heck* is a case in which the *inmate plaintiff* sought monetary damages but not injunctive relief. As will be discussed below, the varied interpretations of the *Heck* holding arise partially from the fact that the language of the holding is not limited to the facts of the case: the holding speaks of "a § 1983 plaintiff" although the plaintiff in *Heck* was an inmate.

█ Implicit in the *Heck* holding is that an inmate's federal claim involving the fact or duration of confinement must first be raised as a habeas petition if he seeks both injunctive relief and monetary damages. The Supreme Court held that damages for

allegedly unconstitutional imprisonment are not cognizable unless the sentence has been invalidated by one of several methods, including "called into question by the great writ." *Heck,* 512 U.S. at 487–88, 114 S.Ct. 2364; *see also Leamer v. Fauver,* 288 F.3d 532, 540–42 (3d Cir.2002). Several courts have applied the *Heck* holding to bar a § 1983 claim for damages based on an improper calculation of a prisoner's sentence. *See, e.g., Graham v. Kooker,* No. 98–0038, 1998 WL 669931, at *4 (E.D.Pa. Sept.28, 1998)(listing cases).

In this case, there is no dispute that *Heck* would apply if Plaintiff were still incarcerated or that Plaintiff has not obtained a favorable decision regarding the calculation of his maximum release date. The question therefore comes down to whether *Heck's* favorable termination requirement applies to a § 1983 plaintiff who is no longer in custody.

The Third Circuit Court of Appeals has not addressed this specific issue and the circuits which have are split. *See, e.g., Nonnette v. Small,* 316 F.3d 872, 876–77 (9th Cir.2002)(holding that *Heck* did not bar former inmate's § 1983 action in which he claimed sentence miscalculation); *Randell v. Johnson,* 227 F.3d 300, 301–02 (5th Cir.2000)(holding that *Heck* would bar former inmate's § 1983 action in which he claimed that the duration of his confinement was unlawful).

The Magistrate Judge and the courts which have held that *Heck* does not bar a § 1983 claim when the plaintiff is no longer incarcerated and thus unable to obtain habeas relief rely on dicta in the concurring opinions in *Heck* and *Spencer.* (*See, e.g.,* Doc. 18 at 8–14.)

In Justice Souter's concurring opinion in *Heck,* he concluded that the majority opinion should be read as "saying nothing more than that now, after enactment of the habeas statute and because of it, prison

inmates seeking § 1983 damages in federal court for unconstitutional conviction or confinement must satisfy a requirement analogous to the malicious-prosecution tort's favorable-termination requirement." *Heck,* 512 U.S. at 500, 114 S.Ct. 2364. Justice Souter explained that "allowing a state prisoner to proceed directly with a federal-court § 1983 attack on his conviction or sentence 'would wholly frustrate explicit congressional intent' as declared in the habeas exhaustion requirement." *Id.* at 498, 114 S.Ct. 2364 (quoting *Preiser,* 411 U.S. at 489, 93 S.Ct. 1827.)

Justice Souter indicated that the favorable termination requirement should not apply in those cases where habeas is not available because no conflict would arise between habeas and § 1983. *Id.* at 500, 114 S.Ct. 2364. Examples of cases where § 1983 should be allowed without the favorable termination requirement were "people who were merely fined ... or have completed short terms of imprisonment, probation or parole, or who discover (through no fault of their own) a constitutional violation after full expiration of their sentences ..." *Id.* at 500, 114 S.Ct. 2364. Justice Souter explained that if these people were required to show the invalidation of their convictions or sentences,

> the result would be to deny any federal forum for claiming a deprivation of federal rights to those who cannot first obtain a favorable state ruling. The reason, of course, is that individuals not "in custody" cannot invoke federal habeas jurisdiction, the only statutory mechanism besides § 1983 by which individuals may sue state officials in federal court for violating federal rights. That would be an untoward result.

*Id.* In so concluding, Justice Souter also expressed support for a "rule that forces inmates to follow the federal habeas route with claims that fall within the plain language of § 1983 when that is necessary to

prevent a requirement of the federal habeas statute from being undermined." *Id.* at 501, 114 S.Ct. 2364.

In his *Spencer* concurrence (in which Justices O'Connor, Ginsburg and Breyer joined and with which Justice Stevens noted his approval in his dissent), Justice Souter acknowledged that "the majority opinion in *Heck* can be read to suggest that favorable-termination is an element of any § 1983 action alleging unconstitutional conviction, whether or not leading to confinement and whether or not confinement continued when the § 1983 action was filed." *Spencer,* 523 U.S. at 19, 118 S.Ct. 978. However, Justice Souter referred to the position he outlined in his *Heck* concurrence to conclude that "*Heck* did not hold that a released prisoner *in Spencer's circumstances* is out of court on a § 1983 claim, and for reasons explained in my *Heck* concurrence, it would be unsound to read either *Heck* or the habeas statute as requiring such a result." *Spencer,* 523 U.S. at 19, 118 S.Ct. 978 (emphasis added).

The circumstances which Justice Souter found removed the case from the *Heck* holding were that the federal habeas petitioner (who sought to invalidate his parole revocation) had first filed habeas petitions in state court and then filed a federal habeas petition. Before the district court addressed the merits of the habeas petition, the petitioner's sentence expired and the district court dismissed the petition as moot. *Spencer,* 523 U.S. at 1, 118 S.Ct. 978. The essential holding of *Spencer* is that the expiration of the petitioner's sentence caused his petition to be moot because it no longer presented an Article III case or controversy. *Id.* Thus, Justice Souter's concurrence addressed the availability of § 1983 in light of the unavailability of federal habeas given the above-outlined circumstances.

Now, as [after *Heck*], we are forced to recognize that any application of the favorable termination requirement to § 1983 suits brought by plaintiffs not in custody would produce a patent anomaly: a given claim for relief from unconstitutional injury would be placed beyond the scope of § 1983 if brought by a convict free of custody, when exactly the same claim could be redressed if brought by a former prisoner who had succeeded in cutting his custody short through habeas.

*Spencer*, 523 U.S. at 20–21, 118 S.Ct. 978. The coordinating footnote illustrates that "a convict given a fine alone, or sentenced to a term too short to permit even expeditious litigation without continuances before expiration of the sentence, would always be ineligible for § 1983 relief." *Id.* at 21 n. *, 118 S.Ct. 978.

Justice Ginsburg also wrote a separate concurring opinion. She stated that she had come to agree with Justice Souter's reasoning in his *Heck* concurrence: "individuals without recourse to the habeas statute because they are not 'in custody' (people merely fined or whose sentences have been fully served for example) fit within § 1983's broad reach." *Spencer*, 523 U.S. at 21, 118 S.Ct. 978.

Justice Stevens noted in his dissenting opinion that "[g]iven the Court's holding that petitioner does not have a remedy under the habeas statute, it is perfectly clear, as Justice Souter explains, that he may bring an action under 42 U.S.C. § 1983." *Spencer*, 523 U.S. at 25 n. 8, 118 S.Ct. 978.

In the majority opinion, however, in which all of the Justices except Justice Stevens joined, the Court stated that it did not believe "that a § 1983 action for dam-ages must always and everywhere be available." *Spencer*, 523 U.S. at 17, 118 S.Ct. 978.

■ As noted previously, the circuits which have addressed *Heck's* application to a former prisoner post *Spencer* are split. Three circuits have concluded that *Heck's* rule applies to all § 1983 plaintiffs. *Huey v. Stine*, 230 F.3d 226, 229–30 (6th Cir. 2000); *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir.2000); *Figueroa v. Rivera*, 147 F.3d 77, 83 n. 3 (1st Cir.1998). The First, Fifth and Sixth Circuits have acknowledged the recent concurring opinions in *Spencer* which call into question the applicability of the *Heck* rule to *all* § 1983 plaintiffs. *Id.* However, they will apply *Heck's* favorable termination requirement to all § 1983 plaintiffs until the Court overrules what they consider applicable precedent.[5] *Id.* The *Randell* court succinctly summarized its reason for applying *Heck:*

> We are mindful that dicta from concurring and dissenting opinions in ... *Spencer v. Kemna* ... may cast doubt upon the universality of Heck's "favorable termination" requirement. The Court, however, has admonished lower courts to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in its subsequent decisions, and to leave to the Court the "prerogative of overruling its own decisions."

*Randell*, 227 F.3d at 301 (quoting *Agostini v. Felton*, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997)(additional and internal citations omitted)).

In the Ninth Circuit opinion in *Nonnette v. Small*, 316 F.3d 872 (9th Cir.2002), the district court had held that *Heck* precluded

---

**5.** These circuits do not agree with the Magistrate Judge's determination that "[g]iven that *Heck* involved a state prisoner, any statements in the majority opinion in that case that would lead to the inference that the favorable-termination requirement applies to those who have been released from custody are dicta." (Doc. 18 at 16.)

Nonnette, a former state prisoner no longer in custody, from filing a § 1983 action. Noting that their ruling was in accord with at least two sister circuits, the Circuit Court reversed because they found the plaintiff was on parole and a habeas action could not proceed. *Id.* at 877 (citing *Huang v. Johnson,* 251 F.3d 65, 75 (2d Cir.2001); *Carr v. O'Leary,* 167 F.3d 1124, 1127 (7th Cir.1999)). The court made this determination based on the reasoning that the concurring opinions in *Spencer* clarified the original meaning of *Heck* not to include § 1983 plaintiffs who are no longer in custody. *Id.* at 877 & n. 5. Citing *Spencer,* the Ninth Circuit found "five justices disagreed" with the majority opinion writer Justice Scalia and quotes part of Justice Souter's concurring opinion. *Id.* at 876.

But in *Spencer,* Justice Souter very clearly says "I join the Court's opinion as well as the judgment, though I do so for an added reason the Court does not reach, but which I spoke to while concurring in a prior case." *Spencer,* 523 U.S. at 18, 118 S.Ct. 978. Then Justice Souter goes on to say that *Heck* did not hold a released prisoner "in Spencer's circumstances is out of court on a 1983 claim and, for reasons explained in my *Heck* concurrence, it would be unsound to read either *Heck* or the habeas statute as requiring any such result." *Id.* at 19, 118 S.Ct. 978.

> However, the *Heck* Court says
>
> [w]e hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is *not* cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to suit.
>
> . . . . .
>
> In another respect, however, our holding sweeps more broadly than the approach respondents had urged. We do not engraft an exhaustion requirement upon § 1983 unless and until the conviction or sentence is reversed, expunged invalidated, or impugned by the grant of a writ of habeas corpus. That makes it unnecessary for us to address the statute-of-limitations issue wrestled with by the Court of Appeals, which concluded that a federal doctrine of equitable tolling would apply to the § 1983 cause of action while state challenges to the conviction or sentence were being exhausted.

*Heck,* 512 U.S. at 486–87, 114 S.Ct. 2364 (emphasis in original)(footnotes omitted).

Thus, reading Justice Souter's *Spencer* concurrence and *Heck* together, Justice Souter seems to try to concur but not agree with the Court and opt for a more "sensible" result.

This is an example of how such ruminating has resulted in the Court itself having "put § 1983 and habeas corpus on ... a 'collision course'" as Justice Thomas noted in his *Heck* concurrence. *Heck*, 512 U.S. at 491, 114 S.Ct. 2364 (citation omitted). In addition, this conflicting, conflating and confusing writing causes much consternation to a lower court and to litigants trying to adhere to the "determinations" of the highest Court.

Thus, we see the type of conflicted reasoning epitomized in footnote five of the Ninth Circuit's opinion in *Nonnette* and Section II of the Fifth Circuit's opinion in *Randell*. *Nonnette*, 316 F.3d at 877, n. 5; *Randell*, 227 F.3d at 301–02.

The Third Circuit Court of Appeals has not ruled directly on this issue and our research does not reveal that any court in our circuit has applied the *Spencer* concurring dicta. However, the Court of Appeals has discussed the overlap of § 1983 and habeas and reviewed the majority and concurring positions in *Spencer*. *Torres v. Fauver*, 292 F.3d 141, 145 n. 5 (3d Cir. 2002); *Leamer v. Fauver*, 288 F.3d 532, 541–42 (3d Cir.2002). In considering the availability of habeas corpus and § 1983, the *Leamer* court discussed relevant United States Supreme Court decisions including *Spencer*. *Leamer*, 288 F.3d at 540–42.

Most recently, in *Spencer v. Kemna*, the Court addressed a contention that a habeas action brought subsequent to the expiration of the prisoner's sentence should not be viewed as moot, because the plaintiff would have been foreclosed from bringing an action under § 1983 unless he could establish the invalidity of his parole revocation. The Court stressed that § 1983 would not be foreclosed if his challenge were to procedure and not the result, as long as "the procedural defect did not necessarily imply the invalidity of the revocation."

*Id.* (citing *Spencer*, 523 U.S. at 17, 118 S.Ct. 978.) Though the issue of a released prisoner seeking damages was not before the *Leamer* court, the court cited the majority position in *Spencer* rather than the concurrence which indicated that § 1983 may be more broadly available to a person not in custody.

In a decision filed one month later, the Third Circuit specifically noted that the case did not require it to answer the question of whether the favorable termination rule of *Heck* apples to persons unable to petition for a writ of habeas corpus. *Torres*, 292 F.3d at 145 n. 5. Nevertheless, the *Torres* court discussed *Spencer* more extensively than the court had in *Leamer*, noting the discrepancy between the majority and concurring dicta. The court set out the habeas petitioner's argument that his petition could not be moot because, if it were, *Heck's* favorable termination rule would bar him from bringing a § 1983 action, and he would be left without any federal forum in which he could seek redress for the parole revocation. *Id.* (citing *Spencer*, 523 U.S. at 17, 118 S.Ct. 978). *Torres* then reviewed the discrepancy between the majority and concurring responses to this argument: the majority dismissed the argument as a "great non sequitur, unless one believes (as we do not) that a § 1983 action for damages must always and everywhere be available[,]" *Id.* (quoting *Spencer*, 523 U.S. at 17, 118 S.Ct. 978); five Justices (four in concurrence and one in dissent who noted agreement with the concurrence) "expressly rejected the majority's 'great non sequitur' dictum and said that the favorable termination rule applies 'only [to] *inmates* seeking § 1983 damages for unconstitutional *conviction or confinement* [,]'" *Id.* (quoting *Spencer*, 523 U.S. at 20–21, 25 n. 8) (emphasis added in *Torres*). *Torres* summarized the concurring and dissenting Justices' position as follows: "current and

former prisoners who cannot seek habeas relief, they said, can bring a § 1983 claim without satisfying the favorable termination rule even if they are challenging the legality of their conviction or the duration of their confinement." *Torres*, 292 F.3d at 145 n. 5. *Torres* then noted the circuit split on the issue and reiterated that the case did not require consideration of the question "whether a § 1983 remedy must be available where habeas relief is not." *Id.*

The *Leamer* and *Torres* discussions do not help us predict how the Third Circuit would rule on this issue. However, we note that *Leamer* mentioned only the majority opinion in *Spencer*: "the Court stressed that § 1983 damages need not 'always and everywhere be available' ...." *Leamer*, 288 F.3d at 542; *supra* pp. 472–473.

Based on the foregoing analysis, we choose to follow the Fifth Circuit's reasoning in deciding that *Heck* applies in the instant case. Despite the dicta from concurring and dissenting opinions in *Heck* and *Spencer* and the fact that doubt may be cast upon the universality of *Heck's* "favorable termination" requirement, we will heed the Supreme Court's warning in *Agostini:* even if precedent appears weakened by pronouncements in its subsequent decisions, we are to leave to the Court the "prerogative of overruling its own decisions." *Agostini*, 521 U.S. at 237, 117 S.Ct. 1997; *Randell*, 227 F.3d at 301. In *Heck*, the Court's holding was unequivocal: "*We hold* that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a *§ 1983 plaintiff* must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. *Heck*, 512 U.S. at 486, 114 S.Ct. 2364 (emphasis added).

The Supreme Court has not overruled *Heck*, and thus it remains binding precedent. If the concept of following precedent is to have any real meaning, we should not engage in tortuous reasoning simply to reach a conclusion we feel is more "sensible" or a result that makes us more comfortable. As Justice Souter and others have pointed out, "constitutional lines have to be drawn, and on one side of every one of them is an otherwise sympathetic case that provokes impatience with the Constitution and with the line. But constitutional lines are the price of constitutional government." *Agostini*, 521 U.S. at 254, 117 S.Ct. 1997.

Despite dicta which may indicate otherwise, the United States Supreme Court did not limit its holding in *Heck* and we will not do so here.

## VI

However, because the circuits are split and the Third Circuit has not ruled on the specific issue before us, we will also analyze our case in the context of the *Heck* and *Spencer* concurring dicta.

We think an important consideration in this case—one which was not before the *Spencer* court or discussed in the other circuit opinions which have dealt with the issue—is the fact that this § 1983 plaintiff (who filed the § 1983 action while incarcerated) failed to file a habeas action while he was in prison although he was confined for the total time period in which such an action could have been timely filed.

We engage in the following discussion of what Plaintiff's proper procedure would have been at the time he became aware of the alleged miscalculation recognizing that, because Plaintiff has been released from

prison, the discussion is theoretical rather than dispositive. However, we think it is important to consider what Plaintiff should have and could have done in order to determine what relief may be appropriate when the proper procedure was not followed.

█ It has long been established that a state prisoner's proper action to contest the calculation of a release date in federal court is a habeas corpus petition rather than a 42 U.S.C. § 1983 action. In *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the United States Supreme Court held that when a state prisoner is challenging the fact or duration of his physical confinement, and the relief he seeks is a determination that he is entitled to either immediate release or a speedier release, his sole federal remedy is a writ of habeas corpus. *Preiser*, 411 U.S. at 500, 93 S.Ct. 1827. *Preiser* did not address the situation where a prisoner is seeking monetary damages in connection with his claim that his detention is unlawful. However, as noted previously, implicit in the *Heck* holding is that an inmate's federal claim involving the fact or duration of confinement must first be raised as a habeas petition if the inmate seeks both injunctive relief and monetary damages. *See supra* p. 470.

█ A recent case within our circuit concluded that a challenge to the recalculation of a sentence was properly cognizable under 28 U.S.C. § 2241. *Faulkner v. Pennsylvania Department of Corrections*, 221 F.Supp.2d 560, 562 (E.D.Pa.2002).[6] Although § 2241 does not explicitly include an exhaustion requirement, the *Faulkner*

court found that exhaustion would be required in a recalculation claim. *Id.* at 563. This conclusion was based on the fact that the Third Circuit Court of Appeals has consistently required exhaustion of claims brought by state prisoners under § 2241. *Id.* (citations omitted). "While exhaustion is mandated by Section 2254, it has developed through decisional law in applying principles of comity and federalism as to claims brought under 28 U.S.C. § 2241. Exhaustion is not a jurisdictional requirement but rather addresses federalism and comity concerns . . . ." *Coady v. Vaughn*, 251 F.3d 480, 488 (3d Cir.2001). *Faulkner* found that the proper procedural vehicle to challenge prison officials' computation of a sentence in Pennsylvania is a petition for a writ of habeas corpus *ad subjudiciem* filed in the sentencing court. *Faulkner*, 221 F.Supp.2d at 563.[7]

█ Finally, the statute of limitations for a habeas action brought by a person in state custody is one year. 28 U.S.C. § 2244(d)(1). The one year limitations period found in 28 U.S.C. § 2244(d)(1) applies to any challenge by a convicted state prisoner to the calculation of his sentence. *McLean v. Smith*, 193 F.Supp.2d 867, 872 (M.D.N.C.2002). The provision applicable in this case provides that the limitation period would begin to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). In a petition which alleged a miscalculation of a release date, the Second Circuit Court of Appeals found that the petitioner "could not have argued that he was in custody in violation

---

6. Although some courts consider 28 U.S.C. § 2254 the proper vehicle for a state prisoner to raise such a claim, the distinction is not central to our analysis. *See, e.g., James v. Walsh*, 308 F.3d 162, 165–66 (2d Cir.2002).

7. Because Plaintiff's potential available avenues of state relief are not before the Court or central to our analysis, we need not analyze what state court remedies Plaintiff may have had. We note only that applicable law indicates that exhaustion would be required if Plaintiff had filed a habeas petition.

of the laws of the United States before the time when, according to his calculations, he should have been released." *James v. Walsh,* 308 F.3d 162, 168 (2d Cir.2002). Other courts have concluded that the limitations period begins to run when the inmate becomes aware of the miscalculation. *Hall v. Edwards,* No. Civ. A. 7:01–CV–00837, 2002 WL 32074715, at *2 (W.D.Va. Jan.7, 2002); *Cable v. Cunningham,* No. Civ. 98–573–B, 1999 WL 814368, at *2 n. 4 (D.N.H. July 8, 1999.) The limitations period is tolled for the time during which the petitioner pursues both administrative remedies and state exhaustion. *Dixon v. Page,* 291 F.3d 485, 490 (7th Cir.2002); *Morris v. Cockrell,* No. Civ. A. 402CV809Y, 2003 WL 21254880, at *1 (N.D.Tex. March 25, 2003).

■ Given the facts of the present case—specifically that Plaintiff filed a federal § 1983 action when he was a state prisoner in which he claimed that his maximum release date was improperly calculated and in which he sought both injunctive and monetary relief—Plaintiff should have filed a petition for habeas corpus within the limitation period for such an action. If Plaintiff had filed a federal habeas petition while in custody, he would have been required to satisfy both the exhaustion and limitations provisions of habeas.

Regarding the limitations period, under 28 U.S.C. § 2244(d)(1)(D) Plaintiff should have filed a habeas petition either within one year of the date which he calculated as his proper maximum date or within one year of when he discovered the miscalculation—depending on whether the *James* or *Hall/Cable* tolling rule is used. *See supra* pp. 474–475. Since our research does not

reveal Third Circuit precedent on this issue, we will apply the rule most beneficial to Plaintiff. Plaintiff does not precisely pinpoint when he became aware of the alleged miscalculation. However, exhibits submitted to the Court indicate that he questioned the calculation of his minimum and maximum dates to the Commonwealth of Pennsylvania Board of Probation and Parole before August 22, 2000.[8] Alternatively, Plaintiff asserts that his maximum date should have been February 7, 2001. Therefore, using the date most beneficial to Plaintiff—February 7, 2001—as the date from which the one-year period began to run, Plaintiff could have filed a federal habeas action within one year of that date. Tolling the period during which Plaintiff pursued administrative remedies—April 4, 2001 to August 1, 2001—would add 129 days to the limitation period. (Doc. 1 Exs. G, H.) Thus, rather than February 7, 2002, the time for filing would have been extended until June 16, 2002. No further tolling would be applicable because the record does not indicate that Plaintiff filed any state or federal action regarding this matter from the time he was notified that his appeal to final review was denied, August 1, 2001, until the filing of the instant 42 U.S.C. § 1983 action on December 5, 2002. Therefore, it is clear that if Plaintiff had tried to file the proper action in this matter—a petition for a writ of habeas corpus—the petition could not have been timely filed after June 16, 2002.

The timeliness of Petitioner's 42 U.S.C. § 1983 action is not questioned. The limitations period for such an action is two years. *See, e.g., Kost v. Kozakiewicz,* 1 F.3d 176, 189 (3d Cir.1993). Here, we

---

**8.** By letter dated August 22, 2000, the Pennsylvania Board of Probation and Parole responded to Plaintiff's correspondence regarding calculation of release dates. The Parole Manager reviewed some aspects of Plaintiff's sentence calculation and directed him to contact the Department of Corrections with further questions about his minimum and maximum dates because the Board of Probation and Parole had no jurisdiction in the matter. (Doc. 1 Ex. i.)

raise the issue of timeliness under habeas and civil rights actions to highlight the fact that, although Plaintiff's § 1983 action was timely, if he had filed the proper action—habeas corpus—the action would have been time-barred. Therefore, if we allow this case to go forward, we will have allowed Plaintiff to circumvent the habeas statute of limitations. Also, as noted previously, because Plaintiff did not file, a federal habeas petition, he also avoided the exhaustion of state remedies requirement of a habeas action. *See supra* p. 475 & n. 7.

Plaintiff could have, and did not, file a habeas action while incarcerated and the one year limitation period for filing such an action expired, at the latest, approximately eight months before he was released from prison. *See supra* pp. 471–472. This is sufficient time for a district court to review and decide a habeas petition.[9] Further, if Plaintiff had filed a habeas petition within the appropriate time and the district court had not ruled on the petition prior to Plaintiff's release, he would be in a position similar to the petitioner before the *Spencer* court—one who had filed the appropriate action but whose release mooted his habeas petition.

 Having established what Plaintiff should have and could have done to redress his miscalculation claim in a federal

forum, we now turn to whether the favorable termination rule of *Heck* applies in light of Plaintiff's release from prison subsequent to the filing of his § 1983 action.

We acknowledge that the *Spencer* concurrence used some broad language in dicta—referring to a § 1983 plaintiff who is a "convict free of custody" and a "former prisoner, no longer 'in custody.'" But we also think that other dicta in *Spencer* and *Heck* counsels caution in adopting the Second, Seventh and Ninth Circuits' position (that *Heck* does not apply to plaintiffs no longer in custody) or in predicting how the Supreme Court would rule on the facts of this case.[10] (*Spencer*, 523 U.S. at 21, 118 S.Ct. 978.)

This reading of the *Spencer* dicta is appropriate for several reasons. Justice Souter specifically referred to a "released prisoner in Spencer's circumstances" when he opined that, for reasons explained in his *Heck* concurrence, *Heck* did not hold that such a prisoner was foreclosed from § 1983 relief. *Spencer*, 523 U.S. at 19; 118 S.Ct. 978. As noted previously, Spencer had filed the appropriate action (habeas corpus) within the appropriate time period and the concurrence addressed the question of whether he could file a § 1983 action *after* his release mooted the habeas petition—Spencer at that point *had not* filed a § 1983 action. Under the circum-

---

9. This Court is ruling on this § 1983 complaint within eight months of when it was filed on December 2, 2002.

10. Defense counsel has notified the Court that the Supreme Court has granted certiorari on a Sixth Circuit case, *Muhammed v. Close*, —— U.S. ——, 123 S.Ct. 2573, 156 L.Ed.2d 602 (2003). The Court granted certiorari on two issues: 1) whether a plaintiff who wishes to bring a § 1983 suit challenging only the conditions, rather than the fact or duration of his confinement, must satisfy the favorable termination rule of *Heck*; and 2) whether a prison inmate who has been but is no longer in administrative segregation may bring a

§ 1983 suit challenging the conditions of his confinement (i.e. his prior placement in administrative segregation) without first satisfying the favorable termination requirement of *Heck*. *Muhammad*, —— U.S. ——, 123 S.Ct. 2573, 156 L.Ed.2d 602. Although these issues are related to the issue before this Court in that they involve the applicability of *Heck*, our case differs in the important respect that the duration of confinement, rather than conditions of confinement, is at issue here. Therefore, our analysis and conclusion in this case is not altered by the fact that the Supreme Court has granted certiorari on a case involving the conditions of confinement.

stances, it was through no fault of Spencer's that habeas relief was unavailable to him.

Among the reasons announced in his *Heck* concurrence, to which Justice Souter referred in his *Spencer* concurrence, was the fact that no conflict would arise between habeas and § 1983 if the favorable termination rule of *Heck* did not apply in those cases where habeas was not available. *Heck,* 512 U.S. at 500, 114 S.Ct. 2364; *supra* pp. 472–473. Examples of cases where § 1983 should be allowed without the favorable termination requirement were "people who were merely fined ... or have completed short terms of imprisonment, probation or parole, or who discover (through no fault of their own) a constitutional violation after full expiration of their sentences ..." *Heck,* 512 U.S. at 500, 114 S.Ct. 2364; *supra* p. 470–471. In his *Spencer* concurrence, Justice Souter illustrated his concern that some plaintiffs would always be ineligible for § 1983 relief by citing the examples of "a convict given a fine alone, or sentenced to a term too short to permit even expeditious litigation ... before expiration of the sentence." *Spencer,* 523 U.S. at 21 n. *, 118 S.Ct. 978; *supra* p. 471–472.

We also note that the speculative language in the *Spencer* concurrence refers to a § 1983 plaintiff who is not in custody *when the action is brought:* " § 1983 ... brought by a convict free of custody" and "a former prisoner, no longer 'in custody,' *may bring* a § 1983 action." *Spencer,* 523 U.S. at 21, 118 S.Ct. 978 (emphasis added). Thus, by its plain meaning, the *Spencer* dicta does not refer to a prisoner who filed a § 1983 action while he was incarcerated.[11]

Further, despite Justice Souter's suggestion of a less restrictive reading of *Heck* in some circumstances, he has continually affirmed his belief that § 1983 should not be allowed to undermine habeas. In *Heck,* Justice Souter explained that "allowing a state prisoner to proceed directly with a federal-court § 1983 attack on his conviction or sentence 'would wholly frustrate explicit congressional intent' as declared in the habeas exhaustion requirement." *Heck,* 512 U.S. at 498, 114 S.Ct. 2364 (quoting *Preiser,* 411 U.S. at 489, 93 S.Ct. 1827); *supra* p. 470–471. Justice Souter also expressed support for a "rule that forces inmates to follow the federal habeas route with claims that fall within the plain language of § 1983 when that is necessary to prevent a requirement of the federal habeas statute from being undermined." *Heck,* 512 U.S. at 501, 114 S.Ct. 2364; supra pp. 470–471. In *Spencer,* Justice Souter stated that he thought the Court was "bound to recognize the apparent scope of § 1983 when no limitation was required for the sake of some other statute or weighty policy, as in the instance of habeas." *Spencer,* 523 U.S. at 20, 118 S.Ct. 978.

Moreover, a close reading of the *Spencer* concurring dicta is appropriate given the statement in the Court's opinion that the Court did not believe "that a § 1983 action for damages must always and everywhere be available." *Spencer,* 523 U.S. at 17, 118 S.Ct. 978. The Court then cited an example where § 1983 might be available in the case of a claimed unlawful parole revocation (the situation before the Court): "[i]f,

---

**11.** We also think that this reading of the *Spencer* concurrence is consistent with Justice Souter's *Heck* concurrence in which he concluded that the majority opinion should be read as "saying nothing more than that now, after enactment of the habeas statute and because of it, *prison inmates* seeking § 1983 damages in federal court for unconstitutional conviction or confinement must satisfy a requirement analogous to the malicious-prosecution tort's favorable-termination requirement." *Heck,* 512 U.S. at 500, 114 S.Ct. 2364 (emphasis added); *supra* p. 470.

for example, petitioner were to seek damages 'for using the wrong procedures', not for reaching the wrong result, and if that procedural defect did not 'necessarily imply the invalidity of' the revocation, then *Heck* would have no application at all." *Id.* (internal citations to *Heck*, 512 U.S. at 482–83, 487, 114 S.Ct. 2364.)

Finally, the Third Circuit Court of Appeals has routinely recognized that, at the intersection of § 1983 and habeas—for cases where the deprivation of rights is such that it necessarily impacts the fact or length of detention—the Supreme Court has made clear that the narrower habeas remedy is the only available avenue of relief. *See, e.g., Leamer*, 288 F.3d at 540.

As discussed above, under relevant precedent, there is no doubt that a habeas petition was the appropriate action for Plaintiff to file to seek federal relief for his miscalculation claim while he was incarcerated. *See supra* pp. 475–478.

There is also no doubt that Plaintiff's case is not analogous to the example the *Spencer* majority used to illustrate a case were *Heck* would not apply. *See supra* pp. 479–480. Plaintiff does not file a claim based on procedure for which a determination in his favor would not imply the invalidity of his sentence calculation; rather, Plaintiff claims that the wrong result was reached regarding the calculation of his sentence. Thus, if we ultimately were to decide in his favor on the calculation issue, our decision would necessarily imply the invalidity of the calculation.

Furthermore, Plaintiff does not fit within any of the examples cited by Justice Souter where habeas would not be available and no conflict would arise between habeas and § 1983. *See supra* p. 479. Plaintiff was not merely fined. He discovered the alleged miscalculation within am-

ple time to file a habeas action. Plaintiff's period of incarceration was not so short that a reviewing court could not have reviewed his miscalculation claim while he was incarcerated.

Finally, Plaintiff does not fit within the plain meaning of the *Spencer* concurring language which would allow a "convict free of custody" or a "former prisoner" to file a § 1983 based on the five Justices' conclusion that *Heck* would not apply to these plaintiffs. *See supra* p. 479. Here, Plaintiff was a prisoner when he filed the § 1983 action now before us.

It is significant that we find Plaintiff would be subject to the *Heck* favorable termination requirement even if we were to apply Justice Souter's preferred reading of the *Heck* holding as expressed in his *Heck* concurrence. At the time he filed the instant action, Plaintiff was a "prison inmate[ ] seeking § 1983 damages in federal court for unconstitutional conviction or confinement [who therefore] must satisfy a requirement analogous to the malicious-prosecution tort's favorable-termination requirement." *Heck*, 512 U.S. at 500, 114 S.Ct. 2364; *supra* p. 470–471, p. 479 n. 11.

This is a case where Plaintiff could have, but did not, file a habeas action while he was incarcerated. Moreover, based on our discussion of the limitations and exhaustion requirements of habeas, to allow this § 1983 action—filed while Plaintiff was still incarcerated and past the limitation period for filing a habeas action—would undermine important habeas requirements and what the Supreme Court has read to be the clear congressional intent that issues relating to the validity of a conviction or the fact or duration of confinement be considered under the specific habeas statute. *See supra* pp. 477–478.

Finally, in this case Plaintiff's record indicates his familiarity with the court system.[12] He has had numerous arrests and

---

12. Our research reveals that it is likely Plain-

tiff filed a 28 U.S.C. § 2254 petition in 1993,

convictions and has been before the Pennsylvania Board of Probation and Parole many times.[13] (*See* Docs. 1, 16.)

Based on the foregoing discussion, we conclude that the *Heck* holding applies to a plaintiff who was in prison when he filed a § 1983 action and who had an opportunity to satisfy the favorable termination requirement before his release. Therefore, we dismiss Plaintiff's § 1983 claim because he was incarcerated when he filed the action and he has not satisfied *Heck's* favorable termination requirement. We come to this conclusion acknowledging that habeas is foreclosed in this case. However, we find that any reading of *Heck* which would allow this § 1983 action to go forward would not be appropriate given the Supreme Court and Third Circuit law ad-

93–CV–01787. The petitioner in that case was a Christopher Mitchell who was incarcerated at the Dauphin County Prison. Piecing together the records presented in this action, it seems that Plaintiff was incarcerated in the Dauphin County Prison when the above habeas action was filed.

13. Though whether in fact Plaintiff was incarcerated beyond his maximum term is not central to our analysis, we note that the records provided do not indicate that Plaintiff served any more time than he should have. The intertwining of Plaintiff's many arrests, paroles and reparoles makes it difficult to determine the exact start and expiration dates of some of his sentences. However, we know two things for certain. First, Plaintiff's incarceration did not exceed the total time to which he was sentenced. Plaintiff has received the following sentences since 1971: ten to twenty years for second degree murder in 1971; three to ten years for delivery of a controlled substance and conspiracy in 1988; and four to eight years as a result of a February 9, 1993 arrest for two counts of delivery of a controlled substance and possession. These sentences total a maximum of thirty-eight years. Therefore, on a straight calculation basis, Plaintiff has received sentences for which he could have been incarcerated until 2009. While the intricacies of parole, backtime and other sentencing considerations possibly could allow an earlier release date, it is a significant point that Plaintiff has engaged in conduct for which he could have been incarcerated until 2009.

Second, we can say with certainty that from his arrest on February 9, 1993, forward, the record clearly shows Plaintiff had received sentences under which he would have been lawfully incarcerated until February 9, 2003—the date of his release. Plaintiff was arrested on February 9, 1993, for delivery of a controlled substance and conspiracy. At the time of his arrest, he was on parole for a 1971 murder conviction and a 1988 delivery of a controlled substance and conspiracy conviction. Plaintiff received four to eight years for the February 9, 1993 offenses. (*See* Doc. 16 Ex. C, C1.) He also received two years of backtime on the sentences for which he was on parole. (*See* Doc. 1 Ex. j.) Plaintiff acknowledges that he received these sentences. (*See* Doc. 16 at 7 ¶¶ 17, 20.)

Pennsylvania law dictates that these sentences had to be served consecutively. The Supreme Court of Pennsylvania stated that 61 P.S. § 331.21a "is quite clear that a parole violator convicted and sentenced to prison for another offense must serve his or her back time and the new sentence in consecutive order." *Commonwealth of Pennsylvania v. Dorian*, 503 Pa. 116, 468 A.2d 1091, 1092 (1983) (citations omitted). Sentencing Code provisions which enable a sentencing judge to make a new sentence concurrent with a previously imposed sentence do not apply in the case of backtime for parole violations. *Id.; Patrick v. Commonwealth of Pennsylvania*, 110 Pa.Cmwlth. 121, 532 A.2d 487, 490 (1987) (citing *Dorian*, 468 A.2d at 1092). Thus, a sentencing judge is not free to override the legislative mandate that backtime and the new sentence must run consecutively.

Applying the law to the facts of this case, Plaintiff's four to eight year sentence which he received on the February 9, 1993, charges and the two year backtime sentence had to be served consecutively. Therefore, he could serve up to ten years on these sentences. Plaintiff served no more than ten years—he was arrested on February 9, 1993, and was released on February 9, 2003. (Plaintiff was out on bail from February 3, 1994, to October 6, 1994. (*See* Doc. 1 at 1, Ex. C–1.)) Based on these calculations, we are confident that Plaintiff did not spend any more time in prison than his sentences called for.

dressing the intersection of § 1983 and habeas cases. Here the only reason Plaintiff cannot satisfy *Heck's* favorable termination requirement is that (through his own fault) he did not file the proper action while he was incarcerated. If the Court were to allow him to circumvent the limitations period and exhaustion requirements of habeas because he chose to file the wrong action while incarcerated, we would be creating a situation where a prisoner could defeat the intent and specific requirements of habeas and *Heck's* favorable termination requirement by waiting to file for damages just before his release.

## VII

We conclude that, even if Plaintiff were able to prove all of his allegations, § 1983 is not available based on the mootness of his request for release, the Eleventh Amendment immunity of Defendants, and the fact that he has not met the favorable-termination requirement of *Heck* which is necessary to maintain a § 1983 action under the circumstances of this case. An appropriate Order follows.

### *ORDER*

AND NOW, this 22nd day of July, 2003, for the reasons set forth in the accompanying Memorandum, it is hereby ordered that:

1. Defendants' Motion to Dismiss, (Doc. 12), is GRANTED;

2. The Clerk of Court is directed to close this case.