**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4248
_____

COREY BRACEY,
                                        Appellant

v.

SECRETARY PENNSYLVANIA DEPARTMENT
OF CORRECTIONS; ANDREA MEINTEL, Director
Bureau of Treatment Services; RICHARD ELLERS,
Director of Bureau of Healthcare; J. BARRY JOHNSON,
Deputy Secretary For Western Region; SUPERINTENDENT
FAYETTE SCI; DEPUTY SUPERINTENDENT FACILITY
MANAGEMENT GATES; DEPUTY SUPERINTENDENT
CENTRALIZED SERVICES ARNELL; MAJOR
MICHAEL ZAKEN; CARL WALKER, Unit Manager;
COUNSELOR BUSTASS; CAPTAIN SUSAN BERRIER;
DEPUTY SUPERINTENDENT CENTRALIZED SERVICES
BRYANT; DEPUTY SUPERINTENDENT FACILITY
MANAGEMENT HALL; CORRECTIONS CLASSIFICATION
PROGRAM MANAGER WOODS; DEPUTY
SUPERINTENDENT FACILITY MANAGEMENT
HANNAH; CORRECTIONS CLASSIFICATION PROGRAM
MANAGER BISER; SUPERINTENDENT SMITHFIELD SCI;
DR. SAVAADRA; DR. FONDER; MHM CORRECTIONAL
SERVICES, INC.; DR. GALLUCCI; WILLIAM LEGGETT,
Captain; DSFM WHIETSEL; SHIRLEY MOORE-SMEAL;
KATHLEEN GNALL, Deputy Secretary for
Re-Entry and Specialized Treatment Services
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 11-cv-00217)
District Judge: Honorable Cathy Bissoon
_____

April 14, 2017
Before: SHWARTZ, COWEN and FUENTES, Circuit Judges

(Opinion filed: April 19, 2017)
_____

OPINION[*]
_____

PER CURIAM

Corey Bracey appeals from an order of the District Court granting summary judgment to the defendants. For the reasons that follow, we will affirm.

Bracey, a state prisoner, filed a civil rights action, 42 U.S.C. § 1983, in the United States District Court for the Western District of Pennsylvania against numerous Pennsylvania Department of Corrections officials and prison health care employees at four different correctional institutions. Bracey alleged that the manner in which inmates with mental health issues are housed in or near the Restricted Housing Unit ("RHU") where he was confined; his confinement in the Special Management Unit ("SMU") program and/or a continuous-camera observation cell in the SMU; and his classification on the Restricted Release List ("RRL") violated his constitutional rights. Discovery ensued[1] and Bracey served numerous interrogatories on the defendants, which they

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Early in the litigation the District Court dismissed certain claims and defendants pursuant to Federal Rule of Civil Procedure 12(b)(6). Bracey has not challenged that

2

answered. Bracey was deposed. The defendants, in two groups -- the Commonwealth defendants and the medical defendants -- moved for summary judgment, Fed. R. Civ. P. 56(a). Bracey opposed the motions. After a review of the summary judgment record, the Magistrate Judge filed a thorough Report and Recommendation, recommending that summary judgment be granted to all of the defendants. Bracey filed Objections and numerous exhibits in support. In an order entered on September 17, 2014, the District Court granted summary judgment to all of the defendants and final judgment was entered on that same day.

Bracey appeals. We have jurisdiction under 28 U.S.C. § 1291.[2] In his Informal Brief, he argues that the housing by correctional officials of mentally ill and non-mentally ill inmates in close proximity violated his rights under the Eighth Amendment because it caused him to suffer a mental breakdown, Appellant's Informal Brief, at 5; that he has a liberty interest in not being housed in the SMU because it is an "off-the-books" experimental behavior modification unit, id. at 7; and that placing him on the RRL violated his rights under the Eighth and Fourteenth Amendments, id. at 9, among other contentions.

We will affirm. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

determination and thus any claims relating to it are deemed waived. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993).

[2] On July 6, 2016, a motions panel of this Court granted Bracey's motion to reopen the appeal after it had been closed for failure to pay the appellate docketing fees.

matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying evidence that shows an absence of a genuine issue of material fact, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In addition, the District Court is required to view the facts in the light most favorable to the non-moving party and make all reasonable inferences in his favor, see Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994). Nevertheless, the nonmoving party may not rest on mere allegations or denials, Fed. R. Civ. Pro. 56(e)(2), (3). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). To defeat the defendants' motions for summary judgment, Bracey was required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing that there was a genuine issue for trial. See Fed. R. Civ. P. 56(c) (setting forth requirements for supporting or opposing party's assertion that a fact cannot be or is genuinely disputed). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The District Court correctly awarded summary judgment to the Commonwealth defendants. Relative to the claims against those defendants, we note that, upon Bracey's arrival at the State Correctional Institution ("SCI")-Fayette on December 4, 2008, or soon thereafter, he was placed in the RHU. The RHU is "Level 5" housing where inmates in disciplinary and administrative custody are housed; many things that are available to inmates in the general population are not available to inmates in the RHU. The RHU at SCI-Fayette included two programs: the Special Management Unit ("SMU") and the

4

Secure Special Needs Unit ("SSNU"). The SMU is a program designed for inmates who have chronic and serious behavioral issues not driven by a diagnosed mental illness. In contrast, the SSNU is designed for mentally ill inmates who exhibit serious behavioral issues determined to be linked to their mental illness. Bracey was in the RHU during the relevant time period, and at times he specifically was in the SMU program in, he alleged, a self-contained camera observation cell. In addition, toward the end of his incarceration at SCI-Fayette, he was placed on the RRL, which is a list of inmates who are not to be released to the general population without the approval of the Secretary of the Department of Corrections or his designee. Bracey remained on the RRL when he was transferred to SCI-Albion and then to SCI-Smithfield.

The manner in which Bracey was housed and his RRL designation formed the basis of his civil rights complaint against the Commonwealth defendants. In his second amended complaint, Bracey alleged that inmates assigned to the RHU, SMU, and SSNU are all housed together; that, consequently, SSNU prisoners do not receive adequate psychiatric treatment, which then causes them to act out (by smearing their feces, for example); and that their acting out, in turn, caused him to suffer a mental breakdown, all in violation of his rights under the Eighth Amendment. The Magistrate Judge determined that there were no genuine disputed facts with respect to these allegations and thus that they did not warrant a trial. We agree.

A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from

5

which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The summary judgment record does not show that SSNU inmates were not receiving adequate mental health care (whether or not they were sometimes housed with SMU inmates on L Block, for example, as one interrogatory answer stated); that their alleged lack of treatment caused them to act out; or that their actions caused the deterioration of Bracey's mental health. Specifically, the evidence relied upon by Bracey in opposing summary judgment, which showed that inmates with mental illness should not be placed in the SMU, does not provide a basis for finding that mentally ill or SSNU inmates were not actually receiving treatment, that being housed in the SMU caused mentally ill inmates to act out, or that any mentally ill inmates' disruptive conduct caused Bracey's mental health to deteriorate. Bracey's summary judgment evidence was limited to proof that he became acutely depressed while in the RHU, but contrary to his assertion, his evidence did not show that his depression was the result of being housed with mentally ill inmates or because those inmates acted out.

Furthermore, there is no evidence in the summary judgment record to support Bracey's allegation that the SMU at SCI-Fayette (or any of the other institutions) is being operated as an experimental housing unit in which "clandestine" mental health treatment is being forced on non-mentally ill inmates. Summary judgment was proper on the claim that the behavior modification techniques used at SCI-Fayette on SMU inmates constitute cruel and unusual punishment. We decline Bracey's suggestion to draw the conclusion that the prison's effort to modify the disruptive behavior of SMU inmates somehow

6

constitutes forced and experimental mental health treatment.  The defendants sufficiently showed for purposes of summary judgment that the SMU provides additional appropriate controls for staff and inmate safety, and Bracey offered no evidence to support his assertion that those "controls" include regular beatings and regular withholding of food, showers, and exercise.  The approach to behavioral change in the SMU, furthermore, does not implicate Vitek v. Jones, 445 U.S. 480 (1980), as Bracey argues.[3]

With respect to Bracey's claims pursuant to the Fourteenth Amendment, summary judgment was proper for the defendants.  First, there is no constitutional right to remain in the general prison population, see Meachum v. Fano, 427 U.S. 215, 225 (1976), and, second, Bracey's evidence would not lead a rational trier of fact to conclude that his confinement in the SMU imposed an atypical and significant hardship on him, see Sandin v. Conner, 515 U.S. at 477, 484 (1995).  Bracey's placement in the SMU did not constitute a dramatic departure from the accepted standards for conditions of confinement such that due process was implicated, id.  Cf. Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002) (no liberty interest in avoiding 120 days of administrative custody); Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir.1997) (conditions in administrative segregation do not impose atypical or significant hardship).

Bracey's placement on the RRL, which continued through his transfer to SCI-Smithfield, is not a housing placement but it presents a similar procedural due process issue.  As a threshold matter, Bracey's specific contention that he suffered an atypical and

---

[3] In Vitek, the Supreme Court held that transfer of a prisoner to a mental hospital triggers certain due process protections.

significant hardship by being placed on the RRL -- because that designation barred him from receiving psychiatric treatment -- finds no factual support whatever in the summary judgment record. It is undisputed that Bracey received the psychiatric treatment that was recommended for him, even if it was not the specific "treatment" (that is, transfer out of the SMU) that he wanted. We note that Bracey attached to his Supplemental Objections items documenting the actions of the Program Review Committee at SCI-Smithfield. One such report, dated April 19, 2012, states that Bracey asked about SSNU placement and was advised that he would need a referral to the Special Assessment Unit ("SAU") to determine his appropriateness for the SSNU. Another report dated October 4, 2012 stated that the SAU would not accept him because of his RRL status, but that prison medical records indicated that psychology staff was meeting with Bracey at his cell on a regular basis. These items do not show the need for a trial; the voluminous summary judgment record read as a whole establishes indisputably that Bracey was receiving the psychiatric treatment deemed appropriate for him, because his behavioral problems are not linked to a mental illness.

In any event, even assuming that Bracey suffered a deprivation of a protected liberty interest by virtue of his extended placement on the RRL, the periodic review offered to Pennsylvania inmates who are indefinitely confined in administrative confinement comports with procedural due process, Shoats v. Horn, 213 F.3d 140, 144 (3d Cir.2000), and does so with respect to placement on the RRL as well. Department of Corrections policy provides that the status of inmates in the SMU must be reviewed every 90 days. Bracey's placement on the RRL merely added another layer of periodic review,

8

review that he actually received, relating to whether he should be released to the general population.  It did not involve a deprivation of liberty as to which any additional procedural due process would attach.

Bracey also alleged that the Commonwealth defendants violated his Fourth and Eighth Amendment rights by placing him in a continuous camera observation self-contained cell in the SMU for eight months.  Bracey alleged that the in-cell camera was constantly recording, even when he was using the toilet; that he was totally isolated; and that in the winter months the cell was unbearably cold, thereby contributing to his mental breakdown.  The defendants asserted that a self-contained cell has a shower inside the cell and a door which exits into a small private yard area.  Bracey does not dispute this.  The District Court properly granted summary judgment on this claim.  With respect to the Eighth Amendment, Bracey's evidence, as thoroughly discussed by the Magistrate Judge, was insufficient to show a genuine issue for trial with respect to the conditions in the observation cell.  Only extreme conditions are actionable, and Bracey made no showing either of extreme conditions or that the defendants were deliberately indifferent to extreme conditions in the observation cell, see Wilson v. Seiter, 501 U.S. 294, 298, 303 (1991).

With respect to the Fourth Amendment generally, an inmate's right of privacy exists only so far as it is "not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration," Hudson v. Palmer, 468 U.S. 517, 523 (1984).  The right to privacy is subject to reasonable limitations in the prison context, and security cameras are an accepted part of the prison environment.  In support of their

9

summary judgment motion, the defendants showed that there are cameras placed throughout the entire institution, and that, although the Control Booth is manned "24/7," the monitors are not; therefore, the likelihood that Bracey was constantly being watched was remote. Furthermore, as the Magistrate Judge noted, Bracey offered no evidence to show that he had any less privacy in the observation cell with respect to showering and toileting than he would have in the communal bathrooms and showers where he could be viewed by staff members *and* other inmates. Under these circumstances, whatever limited rights to bodily privacy an inmate may have, no rational trier of fact could conclude that Bracey's Fourth Amendment rights were violated.

The District Court also properly granted summary judgment to the medical defendants. The Eighth Amendment prohibits deliberate indifference to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). Allegations of negligence or medical malpractice do not, however, suffice to make out an Eighth Amendment claim. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (neither claims of medical malpractice nor disagreements regarding the proper medical treatment are actionable); Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Bracey's assertion that the medical defendants were in a position to prevent him from being housed in close proximity to SSNU inmates, which proximity purportedly led to his mental breakdown, does not state a constitutional violation. Having failed to substantiate his underlying conditions of confinement claims, it necessarily follows that the medical defendants cannot be liable for failing to intervene in the correctional officials' housing decision.

10

Moreover, no rational trier of fact could conclude that the medical defendants were deliberately indifferent to Bracey's medical and psychological needs. Bracey was not on any mental health roster in 2009 or early 2010 and had not been a psychiatric patient when Dr. Peter Saavedra first interacted with him. When Bracey began to complain of symptoms of depression, Dr. Saavedra examined him. Ultimately, Dr. Saavedra examined or treated Bracey ten times between his arrival at SCI-Fayette and his transfer to SCI-Albion nine months later. Moreover, it was Dr. Saavedra who in April, 2010, transferred Bracey to the Mental Health Unit at SCI-Cresson for treatment of his acute depression. Dr. Saavedra continued to care for Bracey upon his return from SCI-Cresson. Although Bracey argues that Dr. Saavedra failed to properly diagnose that he suffered from depression with psychotic features, as distinct from an acute episode of depression with no psychosis, the summary judgment record shows, *at most*, differing opinions on whether Bracey's behavior and self-reported symptoms were linked to depression or were instead linked to a conduct disorder. See Spruill, 372 F.3d at 235 (neither claims of medical malpractice nor disagreements regarding the proper medical treatment are actionable).

In addition, no rational trier of fact could conclude that Dr. Fonder, the medical director of the Mental Health Unit at SCI-Cresson, intentionally minimized Bracey's diagnosis and/or ignored facts from which the inference could be drawn that a substantial risk of serious harm to Bracey existed, see Farmer, 511 U.S. at 837. Bracey alleged that Dr. Fonder, who treated him, refused to recommend a transfer out of the SMU and into the SSNU, despite having diagnosed him with major depressive disorder. The summary

11

judgment record shows that Bracey has misrepresented the diagnosis given to him by Dr. Fonder, all as amply explained by the Magistrate Judge. Dr. Fonder was not of the opinion that Bracey suffered from a major depressive disorder, and Bracey's own evidence did not show that he suffered from any psychiatric problem that prohibited him from being housed in the SMU.

With respect to MHM Correctional Services, Inc., the contract provider of mental health services and employer of Drs. Saavedra and Fonder, as explained by the Magistrate Judge, liability under § 1983 cannot rest on a theory of respondeat superior, see Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d. Cir. 1988), but instead must be based on some policy, practice, or custom within the institution that caused the injury. Here, Bracey failed to identify any policy, practice or custom of MHM that caused a constitutional violation. MHM therefore was entitled to summary judgment as well.

For the foregoing reasons, we will affirm the order of the District Court granting summary judgment to the defendants.